# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-4283

_____

Sisseton-Wahpeton Oyate of the Lake Traverse Reservation; Dave Flute, Chairman

*Plaintiffs - Appellants*

v.

United States Corps of Engineers; Colonel John W. Henderson, in his official capacity as District Commander; Steven E. Naylor, in his official capacity as Regulatory Program Manager

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of South Dakota - Pierre

_____

Submitted: October 19, 2017
Filed: April 25, 2018

_____

Before GRUENDER and BENTON, Circuit Judges, and TUNHEIM[1], District Judge.

_____

TUNHEIM, District Judge.

---

[1] The Honorable John R. Tunheim, Chief United States District Judge for the District of Minnesota, sitting by designation.

Merlyn Drake owns real property adjacent to Enemy Swim Lake in South Dakota and has been in the process of building a road across his property since 1998. Drake purportedly uses this road for agricultural purposes. Because constructing his road requires dredging and filling portions of Enemy Swim Lake and its surrounding creeks and inlets, he applied for permits from the United States Army Corps of Engineers ("the Corps") under the Clean Water Act ("CWA"). Between 1998 and 2009, the Corps issued six permit and exemption determinations to Drake.

But Drake is not the only property owner on Enemy Swim Lake. The majority of the lake's shoreline is owned by the Sisseton-Wahpeton Oyate Tribe (the "Tribe"). The lake is of significant historical and cultural value to the Tribe, and the Tribe fears that Drake's activities harm the lake. The Tribe asserts that Drake misrepresented his plans to the Corps and intends to develop the land rather than use it for agricultural purposes. In 2010, the Tribe sent the Corps a letter requesting that it recapture Drake's road project and order Drake to remove the entirety of his road. The Corps concluded that Drake was continuing to use his land for agricultural purposes and declined to intervene.

The Tribe brought the present action, arguing that the Corps had violated the Administrative Procedure Act ("APA"), the CWA, and the National Historic Preservation Act ("NHPA") in issuing the permit and exemption determinations to Drake. With one exception, the District Court[2] dismissed the Tribe's claims. The Tribe appeals. We affirm.

---

[2] The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota.

# BACKGROUND

## I.    THE CLEAN WATER ACT

The CWA prohibits "the discharge of any pollutant," including dredged or fill material.  33 U.S.C. §§ 1311(a), 1362(6); *see also id.* § 1344(a).  Persons wishing to discharge dredged or fill material into navigable waters must obtain a permit from the Corps.  Certain activities are exempted from the statutory permitting requirements.  Relevant here, one exemption allows dredging "for the purpose of construction or maintenance of farm roads . . . where such roads are constructed and maintained, in accordance with best management practices."  *Id.* § 1344(f)(1)(E).  But the statutory exemptions are covered by a "recapture" provision.  Under the recapture provision, an otherwise exempt discharge requires a permit if it brings "an area of the navigable waters into a use to which it was not previously subject, where the flow or circulation of navigable waters may be impaired or the reach of such waters be reduced."  *Id.* § 1344(f)(2).  In effect, an activity that would normally be exempt – such as the construction of a farm road – requires a permit under the CWA if it ceases to be used for the exempted purposes.

For nonexempt activities, the Corps has the authority to issue individual permits and/or general permits for the discharge of dredged or fill material.  *Id.* § 1344(a), (e).  The Corps has created a system of general permits known as "nationwide permits" to "regulate with little, if any, delay or paperwork certain activities having minimal impacts."  33 C.F.R. § 330.1(b).  Nationwide permits are subject to certain requirements.  Notably, a project pursued pursuant to a nationwide permit must be a "single and complete project."  Reissuance of Nationwide Permits, 72 Fed. Reg. 11,092, 11,192-11,196 (Mar. 12, 2007).  Nationwide Permit 14 authorizes linear transportation projects (such as roads) so long as the water crossing is in nontidal waters and does not cause the loss of greater than one-half acre of waters of the United States.  *Id*. at 11,182-11,184.

Additionally, nationwide permits are subject to the requirements of the NHPA. Reissuance of Nationwide Permits, 72 Fed. Reg. at 11,192. Under the NHPA, a federal agency must "take into account the effect of [an] undertaking on any historic property" prior to the issuance of any license. 52 U.S.C. § 306108. The NHPA defines "undertaking" to include "a project, activity, or program . . . requiring a Federal permit, license, or approval." 54 U.S.C. § 300320(3). The Corps has adopted its own regulations implementing the NHPA for purposes of permitting under the CWA. 33 C.F.R. § 325 app. C.

## II.     FACTUAL BACKGROUND

### A.     Drake's Permit Applications

Merlyn Drake owns real property, which he purportedly uses for agricultural activities, adjacent to Enemy Swim Lake. Since 1998, Drake has been in the process of building a road across his property. Between 1998 and 2009, Drake filed with the Corps six permit applications under the CWA to dredge and fill portions of Enemy Swim Lake in furtherance of building his road. On appeal, the Tribe challenges the Corps's responses to three of these permit applications: (1) the 2003 farm-road exemption determination; (2) the 2006 farm-road exemption determination; and (3) the 2009 nationwide-permit determination.

In 1998, Drake applied for a permit to build a bridge over an inlet of the lake. The Corps treated Drake's project as an exempt farm road. Drake later abandoned the project.

In 2000, Drake applied for a permit to fill the edge of Enemy Swim Lake to create a road bed to connect his house to an established road. The Corps issued Drake a nationwide-permit determination under then-Nationwide Permit 26. *See* Final Notice of Issuance, Reissuance, and Modification of Nationwide Permits, 61

Fed. Reg. 65,874, 65,916 (Dec. 13, 1996) (permitting such discharge into headwaters or isolated waters if it does not cause the loss of more than three acres).

In 2003, Drake applied for two permits to further fill the lake for additional road projects. First, Drake applied for a permit to build a road system "to unify residents to a single road complete with recorded easements." In response, the Corps issued Drake a nationwide-permit determination under Nationwide Permit 14. Second, Drake applied for a permit to build an access road across the inlet, wetland, and creek on the east side of Enemy Swim Lake to provide access to his land for cattle grazing. In response, the Corps issued Drake a farm-road exemption determination.

In 2005, Drake applied for a permit to fill a creek that flows into Enemy Swim Lake in order to construct a bridge and continue access to his pasture. In May 2006, the Corps issued Drake another farm-road exemption determination.

Finally, in 2008, Drake applied for a permit to build an access road "necessary to totally access [his] land." Drake initially represented to the Corps that he intended the road to be used for agricultural purposes. After further discussion with the Corps, Drake disclosed that he would potentially use the road to access a second residence that he intended to build. In May 2009, the Corps issued Drake a nationwide-permit determination under Nationwide Permit 14.

## B. The Tribe's Concerns

Drake's permit applications have been fraught with public challenges from the Tribe and other neighbors. Following the 2003 nationwide-permit and farm-road exemption determinations, the Tribe became concerned about Drake's road projects. The Tribe owns eighty-eight percent of the shoreline of Enemy Swim Lake, which is of cultural, historical, and religious significance to the Tribe. In 1867, the Tribe's

treaty with the United States government was partially negotiated on the shores of the lake. The lake is home to the Tribe's historic burial grounds. Its plants are used for ceremonial and medicinal purposes, and Tribe members fish on the lake. There can be no doubt that the Tribe has a significant interest in protecting the lake and the land surrounding it.

In 2004, Alvah Quinn, the Tribe's Fish and Wildlife Director, received a phone call about Drake's plan to build a road. The Tribe became concerned that Drake's projects might interfere with the ability of its members to fish on the lake. Quinn called James Oehlerking, a member of the Corps, about the Tribe's concern, and further expressed concern that Drake would develop the land rather than use the road for agricultural purposes.

Public concerns escalated, and eventually Senator Tim Johnson requested that the Corps hold a meeting to discuss concerns related to Drake's projects. The meeting was held on January 25, 2005. Quinn and Floyd DeCoteau, another member of the Tribe, attended. All four permit and exemption determinations issued by the Corps from 1998 to 2003 were discussed. According to the Corps, "[a]s a result of the meeting, the Corps agreed to review the regulatory actions to determine if they were appropriate or if [the Corps] should assert discretionary authority by modifying, suspending, or revoking the nationwide permits." After further review, the Corps concluded that it did not "believe any modification or revocation of the permits [was] required."

In the years following the 2005 meeting, the Tribe discussed Drake's projects with the Corps on a number of occasions. On February 8, 2007, Quinn called the Corps to express concerns that Drake was leveling land for cabins rather than to build a farm road. In July 2009, the Tribe again met with the Corps to express its concern that Drake was not using his land for agricultural purposes. The Corps disagreed.

The Tribe's complaints culminated in a March 2, 2010, letter sent to the Corps. The Tribe argued that Drake obtained the permit and exemption determinations through misrepresentations about his projects and was abusing the farm-road exemption. Seeking relief, the Tribe argued that Drake's roads fall within the CWA's recapture provision and that the Corps must (1) require Drake to remove the road, (2) require Drake to obtain a permit to continue construction of the road, and (3) impose civil penalties on Drake for his allegedly willful violations of the CWA. The Tribe also accused the Corps of failing to comply with the requirements of the NHPA.

The Corps responded in an August 30, 2010, letter. With respect to its exemption determinations, the Corps stated that it believed, and continues to believe, that its decisions were supported by sufficient evidence that Drake was actually using his farm road for agricultural purposes. The Corps concluded that the exempted farm roads could not be recaptured because the roads continued to meet the requirements for the farm-road exemption. With respect to its nationwide-permit determinations, the Corps clarified that these projects were not exempt from regulation. However, according to the Corps, the roadways fit within the parameters of the nationwide permits and were each a single and complete project.

## III. Procedural History

The Tribe brought this case on November 7, 2011. The Tribe asserted ten claims against the Corps under the APA, the CWA, and the NHPA arising out of the permit and exemption determinations issued to Drake:

1. The Corps's decision that Drake's road is an exempt farm road is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

2. The Corps's failure to correct its initial decisions that Drake's road is an exempt farm road is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

3. The Corps must regulate Drake's unfinished project under the CWA.

4. The Corps's determination that Drake's activities have not been recaptured is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

5. The Corps's determination that Drake's road complies with its best management practices is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

6. The Corps's determination that Drake's fill of a spring feeding Enemy Swim Lake need not be regulated is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

7. The Corps's determination to allow Drake to stack permit applications, exemptions, and nationwide permits is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

8. The Corps violated the National Historic Preservation Act.

9. The Corps failed to mitigate.

10. The Corps intentionally violated the CWA.

The Tribe requested that the District Court enjoin the Corps from permitting any activities in furtherance of the construction of the road and order the Corps to require Drake to remove the entire road. The District Court held four hearings before dismissing the majority of the Tribe's action.[3]

---

[3] For purposes of brevity, we address the District Court's orders only as relevant to this appeal.

### 1. Finality of the 2010 Letter

The Corps moved to dismiss the Tribe's claims based on the Corps's 2010 response letter. The Tribe argued that the Corps's initial permit and exemption determinations were preliminary decisions and that there was no final decision on any of those matters until August 30, 2010. The District Court concluded that the Corps completed its decisionmaking process with respect to those permit and exemption determinations when it issued Drake the determination letters. Thus, the District Court concluded that the Corps's determination letters constituted final agency actions and accordingly dismissed "all claims the viability of which hinges on considering the August 30, 2010 letter to be a final agency action."

### 2. Justiciability of the Recapture Claim

The Corps moved to dismiss the Tribe's claims to the extent that they challenged nonjusticiable enforcement decisions of the Corps. The District Court cited *Missouri Coalition for the Environment v. Corps of Engineers of the U.S. Army* for the proposition that "a decision not to modify, suspend or revoke a Section 404 permit is one committed to the Corps' absolute discretion and, as such, it is not reviewable under the Administrative Procedures Act." 866 F.2d 1025, 1032 n.10 (8th Cir. 1989), *abrogated on other grounds*, *Goos v. ICC*, 911 F.2d 1283 (8th Cir. 1990). With respect to the farm-road exemptions, the District Court concluded that "[t]he Corps did not in fact 'modify, suspend or revoke' a § 404 permit here, but rather initially found an exemption to § 404 that allowed Drake to pursue certain projects." With respect to the nationwide permits, the District Court concluded that "[t]he Corps . . . failed to show that it has absolute agency discretion over finding § 404 exemptions and granting Nationwide Permits. . . . However, the Corps' decision 'not to modify, suspend or revoke' those determinations subsequently appears to be committed to the Corps' absolute discretion." Thus, the District Court denied the Corps's motion to dismiss to the extent that the Corps sought dismissal of the Corps's

permit and exemption determinations, but dismissed the Tribe's claims to "the extent that the Corps' decisions not to modify, suspend, or revoke those determinations are non-justiciable."

### 3. Statute of Limitations

The Corps moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction because the Tribe's claims were brought after the six-year limitation period had expired. The District Court concluded that the Tribe was aware of the Corps's permit and exemption determinations by January 25, 2005, and the statute of limitations began running on that date. However, the District Court stated that it could not "determine exactly which permits and exemptions were discussed in such a manner, without hearing evidence and evaluating the memory and credibility of witnesses." In response, the Tribe argued that it was entitled to equitable tolling. The District Court concluded that 28 U.S.C. § 2401(a) is jurisdictional and denied the Tribe's request for tolling. The District Court broadly granted the Corps's motion "as to any and all Counts and claims challenging Corps' exemptions and Nationwide Permit determinations that were discussed during the January 25, 2005 meeting as having been granted, authorized, or determined."

Subsequently, the District Court held an evidentiary hearing to determine which permit and exemption determinations were discussed at the January 25, 2005, meeting. Following this hearing, the District Court found that the 1998 exemption determination, the 2000 nationwide-permit determination, the 2003 exemption determination, and the 2003 nationwide-permit determination were all discussed at the meeting and concluded that any claims arising from those permit and exemption determinations were barred by the statute of limitations.

The Tribe filed a motion for reconsideration on its request for equitable tolling based on intervening authority. The Tribe argued that the Supreme Court's decision

in *United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015), required the District Court to conclude that 28 U.S.C. § 2401(a) is not jurisdictional and therefore is susceptible to equitable tolling.  In *Kwai Fun Wong*, the Supreme Court held that a different statute of limitations, 28 U.S.C. § 2401(b), is not jurisdictional. *Id.* at 1638.  In light of Eighth Circuit precedent, the District Court concluded that 28 U.S.C. § 2401(a) is not subject to equitable tolling.  In the alternative, the District Court concluded that the Tribe would not be eligible for equitable tolling in this case because the Tribe did not meet its burden of showing that, "despite the Tribe's diligent pursuit of its rights, some extraordinary circumstance prevented it from filing its dismissed claims on time."

### 4.    The "Stacking" Claims

The Tribe argued that the Corps had unlawfully "stacked" permits and exemptions and therefore the 2009 nationwide permit was not issued for a "single and complete project."   In its final order, the District Court dismissed the Tribe's argument that Drake's 2009 nationwide permit was not a part of a "single and complete project" because the Corps's regulations authorize "phased developments . . . provided that each phase is a single and complete project and has independent utility."

### 5.    NHPA Claims

The Tribe argued that the Corps did not consider the requirements of NHPA in issuing the 2009 nationwide-permit determination.  The District Court concluded that the Corps's nationwide-permit determination was a federal undertaking and that the Corps failed to undergo the necessary NHPA analysis before issuing its determination letter.  The District Court remanded this issue to the Corps.

**DISCUSSION**

## I. CLAIMS ARISING OUT OF THE 2010 LETTER

We must first decide whether the Tribe's claims arising out of the Corps's 2010 response letter are justiciable. According to the Tribe, the 2010 letter consummated two of the Corps's earlier actions. First, the 2010 letter finalized the Corps's permit and exemption determinations. Second, the 2010 letter consummated the Corps's decision that Drake's road had not been recaptured. We conclude that (1) the 2010 letter does not constitute a final agency action for purposes of the permit and exemption determinations, and (2) the Tribe's recapture claim is a nonjusticiable enforcement action.

### A. Final Agency Action

We first address whether the 2010 letter constitutes a final agency action for purposes of the Tribe's challenges to the Corps's permit and exemption determinations. We conclude that it does not.

We review de novo whether an agency action is a final agency action for purposes of the APA. *See Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 813 (8th Cir. 2006). Under the APA, a "final agency action" is subject to judicial review. 5 U.S.C. § 704. Two conditions must be satisfied for an agency action to be "final": First, the action must mark the "consummation of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted). The agency's action cannot be tentative or interlocutory in nature. *Id.* at 178. Second, "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id.* (quoting *Port of Bos. Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). "[I]f the agency has issued a 'definitive statement of its position, determining the rights and obligations of the parties,' that action is final for purposes of judicial

review despite the 'possibility of further proceedings in the agency' to resolve subsidiary issues." *Sierra Club*, 446 F.3d at 813 (quoting *Bell v. New Jersey*, 461 U.S. 773, 779-80 (1983)). To constitute a final agency action, the agency's action must have inflicted "an actual, concrete injury" upon the party seeking judicial review. *AT&T Co. v. EEOC*, 270 F.3d 973, 975 (D.C. Cir. 2001) (quoting *Williamson Cty. Reg'l Planning v. Hamilton Bank*, 473 U.S. 172, 193 (1985)).

At a minimum, the 2010 letter does not satisfy the second prong of the *Bennett* test. The agency action must determine parties' rights or obligations or compel legal consequences. *Hawkes Co. v. U.S. Army Corps of Eng'rs*, 782 F.3d 994, 1000 (8th Cir. 2015). It must inflict some legal injury upon the party seeking judicial review. *AT&T*, 270 F.3d at 976. It may either compel affirmative action or prohibit otherwise lawful action. *Hawkes*, 782 F.3d at 1000; *see also Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963, 969 (8th Cir. 2016) (holding that a letter in which an agency committed to release certain data was final agency action). Generally, an agency does not inflict injury "merely by expressing its view of the law." *AT&T*, 270 F.3d at 976.

The Corps's 2010 letter did not affect the legal rights of Drake, the Tribe, or the Corps. The Tribe claims that the Corps addressed its concerns and evidence for the first time in the 2010 letter and, therefore, the 2010 letter constitutes an adverse application of the Corps's previous decisions to the Tribe. But the 2010 letter is not a reconsideration of the Corps's permit and exemption determinations; rather, the Corps merely stated how it had applied the law at the time it issued the permit and exemption determinations to Drake. *See id.* The 2010 letter did nothing to change the Corps's earlier decisions. Nor has the 2010 letter inflicted any new injury on the Tribe. *See id.* Any harm incurred by the Tribe occurred at the time the Corps issued the initial permit and exemption determinations. The 2010 letter therefore does not determine the parties' rights or obligations or compel legal consequences. *Hawkes Co.*, 782 F.3d at 1000. The Corps's permit and exemption determinations were final at the time the Corps issued the verification letters to Drake.

-13-

Ultimately, the Tribe's argument is aimed at addressing the statute of limitations issue. If the Tribe can establish that these permit and exemption determinations were not final until the 2010 letter, then the Tribe is free to pursue these challenges. But the 2010 letter does not provide an avenue for the Tribe to avoid the statute of limitations.

We therefore affirm the District Court's decision that the 2010 letter does not constitute a final agency action of the Corps's permit and exemption determinations.

## B.    Justiciability of the Recapture Claim

We next address whether the Tribe's recapture claim is justiciable. The Tribe alleged in its complaint that the Corps's determination in the 2010 letter that Drake's road has not been recaptured was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. We conclude that the Tribe's recapture claim is a nonjusticiable challenge to an enforcement decision.

The recapture provision of the CWA states:

> Any discharge of dredged or fill material into the navigable waters incidental to any activity having as its purpose bringing an area of the navigable waters into a use to which it was not previously subject, where the flow or circulation of navigable waters may be impaired or the reach of such waters be reduced, shall be required to have a permit under this section.

33 U.S.C. § 1344(f)(2). The recapture provision operates automatically, bringing a formerly exempt project within the jurisdiction of the Corps as soon as it ceases to be exempt. The Tribe argues that because Drake no longer uses his road for agricultural purposes the road has been recaptured and, therefore, Drake needs a permit.

-14-

But agency action committed to "agency discretion by law" is not subject to judicial review. 5 U.S.C. § 701(a)(2). An agency decision refusing enforcement generally is unsuitable for judicial review. *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). In *Chaney*, the U.S. Supreme Court stated:

> [A]n agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all.

*Id.* The mere use of the word "shall" in a statute "does not preclude the exercise of prosecutorial discretion" by the agency. *Dubois v. Thomas*, 820 F.2d 943, 948 (8th Cir. 1987) (citing *Inmates of Attica v. Rockefeller*, 477 F.2d 375, 381 (2d Cir. 1973)).

The Corps has authority to investigate and impose sanctions on those who violate the CWA. 33 U.S.C. § 1319(a). But this authority is discretionary. *Dubois*, 820 F.2d at 950-51 (finding nonjusticiable a claim seeking to compel enforcement action against an alleged violator of the CWA). The Tribe's 2009 letter to the Corps argued that Drake's road comes within the recapture provision and requested that the Corps (1) require Mr. Drake to obtain a permit; (2) to remove the so-called 'farm' road; and (3) impose civil penalties on Mr. Drake for willful violations of the Clean Water Act. The 2009 letter is nothing more than a request for enforcement, which is a discretionary action left to the Corps. *See Heckler*, 470 U.S. at 831.

The Tribe frames its recapture claim as a challenge to the recapture decision itself. But the Tribe's requested relief shows that the recapture claim is an attempt to force the Corps to enforce the CWA against Drake. The Tribe requested that the

-15-

District Court order the Corps "to require Drake to remove the entire road, bridge, and other portions of the project to bring the entire area back to its original condition." The relief sought is merely the consequence of enforcing the CWA against Drake, presuming the Corps was to find that Drake had in fact violated the CWA.

We therefore conclude that the recapture claim is a nonjusticiable enforcement action and affirm the District Court's dismissal of this claim.

## II.    STATUTE OF LIMITATIONS

We must decide whether the District Court erred in concluding that the Tribe's claims arising from the Corps's permit and exemption determinations made from 1998 to 2003 are barred by the statute of limitations. On appeal, the Tribe argues that (1) 28 U.S.C. § 2401(a) is not a jurisdictional statute of limitations and (2) the Tribe is eligible for equitable tolling. We conclude that the Tribe is not eligible for equitable tolling in this case. In light of this conclusion, we need not address whether 28 U.S.C. § 2401(a) is a jurisdictional statute of limitations.

Under 28 U.S.C. § 2401(a), "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." A plaintiff's claim accrues for purposes of 28 U.S.C. § 2401(a) when the plaintiff "either knew, or in the exercise of reasonable diligence should have known, that [he or she] had a claim." *Izaak Walton League of Am., Inc. v. Kimbell*, 558 F.3d 751, 759 (8th Cir. 2009) (quoting *Loudner v. United States*, 108 F.3d 896, 900 (8th Cir. 1997)).

In some cases, a plaintiff may escape the statute of limitations by establishing that he or she is eligible for equitable tolling. Equitable tolling allows for an extension of the prescribed limitations period "when the plaintiff, despite all due

-16-

diligence, is unable to obtain vital information bearing on the existence of his [or her] claim." *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 238 (8th Cir. 1995) (quoting *Chakonas v. City of Chicago*, 42 F.3d 1132, 1135 (7th Cir. 1994)). But not every statute of limitations can be equitably tolled. While courts presume that a statute of limitations permits equitable tolling in suits against the United States, the presumption is rebuttable. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990). One way for the government to rebut the presumption is to show that Congress made the statute of limitations jurisdictional, as jurisdictional statutes of limitations cannot be equitably tolled. *See United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1631 (2015). We need not decide whether 28 U.S.C. § 2401(a) permits equitable tolling because we conclude that, even if it does, the Tribe is not entitled to it in this case.[4]

We review the District Court's denial of equitable tolling de novo but review the District Court's underlying factual findings for clear error. *English v. United States*, 840 F.3d 957, 958 (8th Cir. 2016). A plaintiff is entitled to equitable tolling only if he or she shows "'(1) that he [or she] has been pursuing his [or her] rights diligently, and (2) that some extraordinary circumstances stood in his [or her] way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). A plaintiff need not be **certain** that his or her rights have been violated. "[I]f a plaintiff were entitled to have all the time

---

[4] We have long considered § 2401(a) a jurisdictional bar. *See Konecny v. United States*, 388 F.2d 59, 61-62 (8th Cir. 1967). Since the Supreme Court decided *Kwai Fun Wong,* the Sixth and Seventh Circuits have held that § 2401(a) is not jurisdictional. *Matushkina v. Nielsen*, 877 F.3d 289, 292 n.1 (7th Cir. 2017); *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 813-18 (6th Cir. 2015). Even before *Kwai Fun Wong*, the Fifth and Ninth Circuits held that § 2401(a) is not jurisdictional. *Clymore v. United States*, 217 F.3d 370, 374 (5th Cir. 2000); *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769-71 (9th Cir. 1997). Nevertheless, because we decide the issue on other grounds, this case is not an appropriate vehicle to reconsider our prior decision that § 2401(a) is a jurisdictional statute of limitations.

he [or she] needed to be *certain* his [or her] rights had been violated, the statute of limitations would never run." *Dring*, 58 F.3d at 1329 (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)). A court therefore asks whether a reasonable person in the plaintiff's situation would be expected to know about the violation of their legal rights. *Id.*

The District Court concluded that the Tribe did not diligently pursue its rights because the Tribe knew that the Corps had authorized Drake's road and that their legal rights were affected by Drake's project no later than January 25, 2005.

According to the testimony of Alvah Quinn, the Tribe first became concerned that Drake's road may affect its ability to fish on Enemy Swim Lake in November 2004. At the time, Quinn was the Fish and Wildlife Director of the Tribe, charged with "manag[ing] [the Tribe's] fish and wildlife resources." On November 8, 2004, Quinn called James Oehlerking about the Tribe's concerns. In his notes from the phone call, Oehlerking wrote that Quinn and the Tribe were concerned because they spear north of the crossing. In particular, Quinn testified that the Tribe was concerned that erosion would fill the mouth of the stream and eventually prevent fish from traveling up the stream. Oehlerking's notes also state, "[Quinn] thinks Drake will get access and develop lots along the lake." Quinn agreed that he "[d]efinitely" spoke with Oehlerking about concerns that Drake would develop the land rather than using it for agricultural purposes. At the time of the phone call, the Tribe knew that Drake's project may interfere with its ability to fish on the lake and was suspicious that Drake intended to develop the land rather than use it for agricultural purposes.[5]

---

[5] The District Court concluded that the Tribe's cause of action did not begin to accrue on November 8, 2004, because the Tribe was not aware at the time of the phone call that the Corps had issued an exemption to Drake. Whether the Tribe's cause of action accrued earlier than January 25, 2005, is immaterial to our decision.

-18-

On January 25, 2005, the Corps held a public meeting to discuss the four permit and exemption determinations issued to Drake from 1998 to 2003. Testimony from the attendees of the meeting and a subsequent letter to Senator Tim Johnson confirm that all four permits and exemptions were discussed at the meeting. A news article published in the Watertown Public Opinion newspaper states that concerns about the effects of Drake's project on fish hatcheries were discussed at the meeting.

The District Court's conclusion that Quinn and DeCoteau attended the meeting as representatives of the Tribe is supported by evidence. Both Quinn and DeCoteau signed the sign-in sheet as "SWO-Realty," indicating that they were attending the meeting in their representative capacities. At the time, Quinn was in charge of the Tribe's Fish and Wildlife program and therefore knew the effects that Drake's project would have on the Tribe's ability to fish on the lake. Following the meeting, Quinn told a reporter that he would take his concerns back to the Tribal Council. The reporter quoted Quinn in the published article:

> Alvah Quinn, Sisseton-Wahpeton Tribal Wildlife Director said the Tribe is concerned about Drake's latest road for environmental reasons. He said the road could negatively impact spawning fish and that the road culvert capacity is a concern, given the upstream drainage area. "We do have concerns about the fish in the stream," he said after the session. "Somebody, whether it's a state, federal, or county agency needs to step up and enforce the laws they have."

Quinn agreed at the evidentiary hearing that these statements were accurate.

Despite any confusion that may exist about what did or did not occur at the meeting, the evidence supports the following: First, the Tribe was aware of Drake's project, and that the Corps had issued four permit and exemption determinations in furtherance of this project, no later than January 25, 2005. Second, the Tribe knew

-19-

Drake's project may affect its ability to fish on the lake. Third, the Tribe was suspicious that Drake did not intend to use the land for agricultural purposes and would instead develop the land. Finally, Quinn – acting as a representative of the Tribe – expressed his belief that the Corps had a duty to "enforce the laws they have." The District Court's findings are well supported by the record and not clearly erroneous.

A reasonable person in the Tribe's position would be expected to know that Drake's road and the Corps's permit and exemption determinations affected their legal rights to fish on Enemy Swim Lake. *Dring*, 58 F.3d at 1329. The District Court therefore did not err in concluding that the Tribe's cause of action against the Corps accrued on January 25, 2005, when Quinn received sufficient information at the meeting to be aware of the permit and exemption decisions.

Nevertheless, the Tribe argues that its cause of action did not accrue until it became aware that Drake changed the use of his road from agricultural purposes to development purposes in 2008. We disagree. The Tribe was well aware by January 25, 2005, that Drake's project (and therefore the Corps's 2003 exemption determination) threatened its fishing rights. The damage to the Tribe's fishing rights is a sufficient injury to bring a cause of action for purposes of seeking an injunction. As evidenced by Quinn's call with Oehlerking, the Tribe was also suspicious – even if it was not certain – that Drake intended to develop his land. The Tribe would have learned through the course of discovery whether the Corps was aware that Drake intended to develop his land rather than build a farm road. The Tribe had an obligation to pursue its rights diligently once it realized that the 2003 exemption threatened its fishing rights. *Holland*, 560 U.S. at 649.

The Tribe has not presented any compelling evidence for us to conclude that it diligently pursued its rights after January 25, 2005. The Tribe was well aware of the consequences of the Corps's permit and exemption determinations and failed to

act. We therefore affirm the decision of the District Court that the Tribe is not eligible for equitable tolling.

## III. THE "STACKING" CLAIM

We must decide whether the Corps violated its own regulations by granting the 2009 nationwide permit. The Tribe argues that the 2009 permit is not related to a "single and complete project" and, therefore, the Corps unlawfully "stacked" permit and exemption verifications. We disagree.

As a threshold matter, the Corps argues that we do not have jurisdiction to hear this issue because the District Court has remanded the 2009 permit determination for reconsideration under NHPA. The Corps argues that it could decide on remand that there is no way for Drake's road to comply with NHPA and vacate the 2009 permit decision, thereby providing the Tribe with the relief it requests. We disagree. We have jurisdiction over "**all final decisions** of the district courts of the United States." 28 U.S.C. § 1291 (emphasis added). "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Giordano v. Roudebush*, 565 F.2d 1015, 1017 (8th Cir. 1977) (quoting *Pauls v. Sec'y of the Air Force*, 457 F.2d 294, 297 (1st Cir. 1972)). The purpose of Section 1291 is to avoid piecemeal review. *Id.* at 1018.

*Giordano* is instructive on the application of Section 1291 in the context of administrative law. There, the district court determined that a plaintiff's due process rights had been violated, remanded the case to the agency, and retained jurisdiction to consider the issue of back pay upon completion of administrative procedures. 565 F.2d at 1016-17. On appeal, this court concluded that the case did not meet the final-decision test because "the district court has only remanded the case for further administrative proceedings and thus its order is not a final judgment." *Id.* at 1017. In so finding, this court stated that "the district court . . . neither granted nor denied the ultimate relief of reinstatement and back pay sought by the plaintiff." *Id.*

-21-

*Giordano* is distinguishable from this case. Here, the District Court denied all relief requested by the Tribe except with regard to whether the 2009 permit violated the NHPA, which was remanded for the Corps to determine. Unlike in *Giordano*, the District Court did not retain jurisdiction to hear the Tribe's arbitrary-and-capricious claim related to the 2009 permit but rather explicitly denied the Tribe's requested relief with respect to that claim. We therefore conclude that the District Court's decision constitutes a reviewable final decision for purposes of Section 1291.

Turning to the merits, the Tribe claims that the Corps acted arbitrarily and capriciously by determining that Drake's 2009 project qualified for a nationwide permit because the 2009 project was not a "single and complete project." We apply the *Auer* (also known as *Seminole Rock*) standard in cases involving an agency's interpretation of its own regulations. *See Auer v. Robbins*, 519 U.S. 452, 461-63 (1997). An agency's interpretation of its own regulations is controlling unless "plainly erroneous or inconsistent with the regulation." *Id.* at 461 (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). We must defer to a permissible interpretation even if it is not the "best" interpretation. *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 613 (2013).

To qualify for a nationwide permit, the activity must be a "single and complete project." Reissuance of Nationwide Permits, 72 Fed. Reg. 11,092, 11,196 (Mar. 12, 2007). A particular nationwide permit "cannot be used more than once for the same single and complete project." *Id.* "Single and complete project" means "the total project proposed or accomplished by one owner/developer or partnership or other association of owners/developers." 33 C.F.R. § 330.2(i).

Nationwide Permit 14 authorizes "[a]ctivities required for the construction, expansion, modification, or improvement of linear transportation projects (e.g., roads . . .) in waters of the United States." Reissuance of Nationwide Permits, 72 Fed. Reg. at 11,183. Generally, a "single and complete project" is defined by its

"independent utility." *Id.* at 11,197. But the Corps has adopted a different definition of "single and complete project" for linear transportation projects. "For linear projects, a 'single and complete project' is all crossings of a single water of the United States (i.e., a single waterbody) at a specific location. **For linear projects crossing a single waterbody several times at separate and distant locations, each crossing is considered a single and complete project**." *Id.*; 33 C.F.R. § 330.2(i) (emphasis added). "However, individual channels in a braided stream or river, or individual arms of a large, irregularly shaped wetland or lake, etc., are not separate waterbodies, and crossings of such features cannot be considered separately." Reissuance of Nationwide Permits, 72 Fed. Reg. at 11,197. We conclude that this interpretation is neither plainly erroneous nor inconsistent with the regulation and, therefore, must defer to the Corps's interpretation. *Auer*, 519 U.S. at 461.

Drake's 2009 project was authorized pursuant to Nationwide Permit 14. We must therefore determine whether the record supports a finding that each project crosses Enemy Swim Lake "at separate and distant locations." The Tribe argues that a cursory glance of the map shows that each project crosses a branch of an "irregularly shaped wetland or lake." To the contrary, the lengths of road stemming from these permits and exemptions each cross a separate body of water. The road stemming from the 2003 exemption crosses a wetland adjacent to Enemy Swim Lake. The road stemming from the 2006 exemption crosses Enemy Swim Creek, which flows into Enemy Swim Lake. The road stemming from the 2009 nationwide permit crosses a separate wetland north of Enemy Swim Creek. While these waterbodies are all connected to Enemy Swim Lake, they are separate waterbodies rather than the arms of "a large, irregularly shaped wetland or lake." By way of analogy, one would not say that the Mississippi River and the Everglades are the same body of water merely because they both join the Gulf of Mexico. Pursuant to the Corps's interpretation of its own regulation, the 2009 nationwide permit constitutes a "single and complete project." *Id.*

-23-

We therefore affirm the District Court's dismissal of the Tribe's arbitrary-and-capricious challenge to the Corps's 2009 permit decision.

## IV. NHPA CLAIMS

The Tribe asks this court to consider the lawfulness of the Corps's regulations enacted pursuant to NHPA. The District Court remanded the 2009 permit and ordered the Corps to reconsider its validity under NHPA. The Tribe acknowledges that a remand order "may not be appealed immediately." *Izaak Walton*, 558 F.3d at 762. The District Court neither made a final decision with respect to the NHPA claim nor granted or denied the Tribe relief with respect to that claim. Therefore, we do not have appellate jurisdiction to address the lawfulness of the Corps's NHPA regulations. 28 U.S.C. § 1291.

\* \* \*

First, because we conclude that the 2010 letter is not a final agency action, we affirm dismissal of claims stemming from this letter. Second, because we conclude that the Tribe's recapture claim is a nonjusticiable enforcement action, we affirm dismissal of the Tribe's recapture claim. Third, because we conclude that the Tribe is not entitled to equitable tolling, we affirm dismissal of the Tribe's claims related to the 1998 exemption determination, the 2000 nationwide-permit determination, the 2003 exemption determination, and the 2003 nationwide-permit determination. Fourth, because we conclude that the Corps did not violate its own regulations in issuing the 2009 nationwide-permit determination, we affirm dismissal of the Tribe's "stacking" claim. Fifth and finally, because the District Court remanded the Tribe's NHPA claim to the Corps, we conclude that we do not have appellate jurisdiction over this issue.

Accordingly, we affirm the District Court.

_____

-24-