# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 24-2951

———————————————

Brake Plus NWA, Inc.; Williams & Lake, LLC

*Plaintiffs - Appellants*

v.

United States Department of Transportation; National Highway Traffic Safety Administration

*Defendants - Appellees*

—————————

Appeal from United States District Court
for the Western District of Arkansas

—————————

Submitted: September 17, 2025
Filed: May 18, 2026

—————————

Before BENTON, GRASZ, and KOBES, Circuit Judges.

—————————

GRASZ, Circuit Judge.

Brake Plus NWA, Inc. and Williams & Lake, LLC (together, the Distributors) sued the United States Department of Transportation (USDOT) and the National Highway Traffic Safety Administration (NHTSA) pursuant to the Administrative Procedure Act (APA). The district court decided the matters at issue are not

reviewable because they are not final agency action, so it dismissed the case sua sponte.  We reverse and remand.

## I. Background

For more than a decade, the Distributors have sold aftermarket electronic modules (Pulse Modules) that cause vehicles' center high mounted stop lamps to rapidly brighten and dim four times, before remaining bright, when drivers activate their brakes.  The Distributors only sell Pulse Modules to dealerships, rather than directly to individuals.

On February 5, 2019, NHTSA issued an "Information Request" letter to Williams & Lake.  This letter states NHTSA was investigating whether Pulse Modules render vehicles' center high mounted stop lamps noncompliant with Federal Motor Vehicle Safety Standard (FMVSS) 108's "steady burning" requirement.  FMVSS 108 requires all "stop lamps" — the lamps that give "a steady light to the rear of a vehicle to indicate a vehicle is stopping or diminishing speed by braking" — to be "steady burning."  49 C.F.R. § 571.108 (2025).  However, FMVSS 108 does not define "steady burning."

Additionally, Congress mandated in the Safety Act that "[a] manufacturer, distributor, dealer, rental company, or motor vehicle repair business may not knowingly make inoperative any part of a device or element of design installed on or in a motor vehicle . . . in compliance with an applicable motor vehicle safety standard . . . ."  49 U.S.C. § 30122(b).  So if Pulse Modules render vehicles' center high mounted stop lamps inoperative under FMVSS 108, the Distributors' customers violate the Safety Act, and risk "a civil penalty of not more than $27,874," every time they install a Module.  49 C.F.R. § 578.6(a)(1) (2025).

After investigating for more than four years, NHTSA's Acting Chief Counsel notified Williams & Lake, by letter dated July 26, 2023, that "Pulse [Modules] take[]

required stop lamps on motor vehicles out of compliance with Federal law." In relevant part, NHTSA's letter states:

> Pulsing stop lamps do not comply with Federal safety standards requiring steady burning stop lamps. FMVSS No. 108, *Lamps, reflective devices, and associated equipment*, requires stop lamps, including the center high mounted stop lamp, to be "steady burning." 49 C.F.R. § 571.108, Table 1-a. NHTSA has consistently explained in several decades of interpretations that pulsing is not steady burning.[] Pulse [Modules] cause[] a high-mounted stop lamp to dim and brighten, which is not a compliant, steady-burning lamp . . . .
>
> W&L previously noted that the term "steady burning" is not defined in regulation, and claimed that its product pulses within the range of photometric intensity values specified in FMVSS No. 108. Accordingly, W&L argued that the vehicle's stop lamp remains compliant. That is inaccurate; pulsing lights are not steady burning lights as required . . . .
>
> Furthermore, . . . the statement on your website that "Pulse [Modules] ha[ve] no effect on your braking system whatsoever" is misleading because it does not inform customers that it, in fact, makes stop lamps noncompliant with Federal safety standards.

NHTSA's letter also instructed Williams & Lake to provide a list of its customers, along with contact information, so NHTSA can "send letters . . . to inform them of the prohibition under Federal law on taking a stop lamp out of compliance with the FMVSS." If Williams & Lake failed to comply, NHTSA's letters threatened it may subject them to "civil penalties of up to $26,315 per day or other enforcement actions."

The record does not indicate NHTSA contacted Brake Plus during its investigation. However, apparently due to the similarities between the Distributors' products, NHTSA also sent Brake Plus a letter on July 26, 2023, informing it that its Pulse Module "takes required stop lamps on . . . vehicles out of compliance with Federal law." The two letters are nearly identical.

-3-

The Distributors filed this case against USDOT and NHTSA in October 2023. In their complaint, the Distributors seek declaratory relief invalidating NHTSA's decision that installation of Pulse Modules render vehicles "inoperative" under FMVSS 108, as well as injunctive relief prohibiting NHTSA from notifying their customers of its decision. The Distributors moved for a temporary restraining order or a preliminary injunction the same day. But before the district court ruled on the restraining order, NHTSA agreed not to send letters to the Distributors' customers until the district court decided whether to issue a preliminary injunction.

After the parties briefed the injunction, the district court dismissed the case sua sponte. In its order, the district court explained the APA only allows federal courts to review final agency action, and in its view, NHTSA's decision to notify the Distributors' customers that Pulse Modules render vehicles noncompliant with FMVSS 108 was not a final agency action. Because the district court dismissed the case, aside from stating in a footnote that the Distributors are unlikely to succeed on the merits of their claims, it did not analyze whether an injunction was warranted. The Distributors now appeal.

## II. Analysis

We review the district court's dismissal of this case for lack of final agency action de novo. *See Sisseton-Wahpeton Oyate of Lake Traverse Rsrv. v. U.S. Corps of Eng'rs*, 888 F.3d 906, 914 (8th Cir. 2018). The APA waives the United States' sovereign immunity so "[a] person suffering legal wrong because of agency action" may obtain judicial review. 5 U.S.C. § 702. However, this review extends only to "final agency action." *Id.* § 704; *see also Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024). For agency action to be final, two factors must be satisfied: (1) "the action must mark the 'consummation' of the agency's decisionmaking process" and (2) "be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (first quoting *Chi. & S. Air Lines, Inc. v. Waterman S.S.*

-4-

*Corp.*, 333 U.S. 103, 113 (1948); and then quoting *Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).

With respect to the first *Bennett* factor, an action consummates the agency's decisionmaking process when it is the agency's "'last word on the matter' in question." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001) (quoting *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 586 (1980)). The district court correctly assumed NHTSA's July 26, 2023, letters consummated its decisionmaking process. These letters were issued by NHTSA's Acting Chief Counsel, *see Ctr. for Auto Safety v. NHTSA*, 452 F.3d 798, 810 (D.C. Cir. 2006) ("NHTSA's Chief Counsel has been delegated authority to '[i]ssue authoritative interpretations of the statutes administered by NHTSA.'" (quoting 49 C.F.R. § 501.8(d)(5) (1998) (alteration in original)), and unequivocally state the conclusion of NHTSA's more than four-year investigation: Pulse Modules render vehicles' center high mounted stop lamps noncompliant with FMVSS 108's "steady burning" requirement.

Indeed, the letters expressly conclude: (1) "FMVSS No. 108 . . . requires stop lamps, including the center high mounted stop lamp, to be 'steady burning'"; (2) "Pulse [Modules] cause[] a high-mounted stop lamp to dim and brighten, which is not a compliant steady-burning lamp"; and (3) the Distributors' customers cannot legally install Pulse Modules because the Safety Act prohibits dealers from "knowingly making inoperative any part of a device or element of . . . a motor vehicle . . . in compliance with an applicable FMVSS." When NHTSA reached these conclusions, its decisionmaking process was complete, as it had decided all its investigation sought to determine, and its letters do not indicate its conclusions were tentative or interlocutory. *See Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) ("The core question is whether the agency has completed its decisionmaking process[.]"); *Bennett*, 520 U.S. at 178 (noting an action does not consummate the decisionmaking process when it is "of a merely tentative or interlocutory nature"); *Saliba v. SEC*, 47 F.4th 961, 967–68 (9th Cir. 2022) (holding an action was the "'consummation of the decision-making process' . . . because there [wa]s nothing

left for the Commission to decide . . .").  Consequently, NHTSA's July 26, 2023, letters meet the first *Bennett* factor.[1]

With respect to the second *Bennett* factor, "direct and appreciable legal consequences" flow when an agency applies its authoritative interpretation of a statutory or regulatory framework to specific facts, *Firearms Regul. Accountability Coal., Inc. v. Garland*, 112 F.4th 507, 525 (8th Cir. 2024), as well as when an agency "compels affirmative action or prohibits otherwise lawful action."  *Minn. Bankers Ass'n v. FDIC*, 152 F.4th 893, 897 (8th Cir. 2025).  We are cognizant that agency action may have "a powerful coercive effect," so we need not "ignore[] reality" when applying this standard.  *Hawkes Co., Inc. v. U.S. Army Corps of Eng'rs*, 782 F.3d 994, 1002 (8th Cir. 2015), *aff'd*, 578 U.S. 590 (2016) (quoting *Bennett*, 520 U.S. at 169).  As such, when an agency's action presents a regulated entity with a catch-22 — "incur substantial compliance costs," "forego what they assert is lawful" activity, "or risk substantial enforcement penalties" — it results in legal consequences.  *Id.* at 1000; *accord Tennessee v. USDOE*, 104 F.4th 577, 600 (6th Cir. 2024); *cf. Heide v. Blakey*, 199 F. App'x 582, 583 (8th Cir. 2006) ("[I]f order provides definitive statement of agency's position, has direct and immediate effect on day-to-day business of party asserting wrongdoing, and envisions immediate compliance with its terms, order is sufficiently final to warrant . . . review.").

Legal consequences flowed from the July 26, 2023, letters because NHTSA applied its interpretation of FMVSS 108's "steady burning" requirement to the facts of this case.  Indeed, the letters expressly state, "Pulse [Modules] cause[] a high-mounted stop lamp to dim and brighten, which is not a compliant, steady-burning lamp."  Additionally, as the letters explain, the Safety Act prohibits dealers from rendering any part of a vehicle inoperative under any FMVSS.  *See* 49 U.S.C.

---

[1]NHTSA's letters also commit to notifying the Distributors' customers "of the prohibition under Federal law on taking a stop lamp out of compliance with the FMVSS."  *See Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963, 969 (8th Cir. 2016) (recognizing an agency consummates its decisionmaking process when it commits to future action).

§ 30122(b). As a result, NHTSA's decision that the Distributors' Pulse Modules render vehicles' center high mounted stop lamp inoperative under FMVSS 108 necessarily means they "cannot be installed for [their] intended use on motor vehicles consistent with Federal law," "[s]ince the [Pulse M]odule is only sold through dealers and must be installed by a professional technician." Thus, because NHTSA applied its interpretation of FMVSS 108 to reach conclusions regarding the legality of Pulse Modules, legal consequences flowed from its July 26, 2023, letters. *See Firearms Regul. Accountability Coal.*, 112 F.4th at 525; *see also AT&T Co. v. EEOC*, 270 F.3d 973, 975–76 (D.C. Cir. 2006) (noting that when "an agency's taking a legal position itself inflicts injury or forces a party to change its behavior, . . . taking that position may be deemed final agency action").

NHTSA's July 26, 2023, letters also state it will send letters to the Distributors' customers notifying them they cannot install Pulse Modules without violating the Safety Act. When NHTSA does so, the Distributors' customers will either have to stop installing Pulse Modules or risk enforcement proceedings carrying "a civil penalty of not more than $27,874" for every module installed. 49 C.F.R. § 578.6(a)(1) (2025). Given the magnitude of this penalty, and that NHTSA will be able to use its letters as compelling evidence customers knowingly violated the Safety Act, NHTSA's letters will doubtlessly have a "powerful coercive effect" on the Distributors' customers and, in turn, a disastrous impact on the Distributors' businesses. *Bennett*, 520 U.S. at 169–71; *Hawkes*, 782 F.3d at 1002; *see also MCR Oil Tools, L.L.C. v. USDOT*, 110 F.4th 677, 688–89 (5th Cir. 2024) ("[P]rototypical examples of final agency action, *inter alia*, 'expect regulated entities to alter their primary conduct to conform to the agency's position' . . . ."); *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 438–39 (D.C. Cir. 1986) (explaining that when an agency demands "compliance" with its "authoritative interpretation" and the "only alternative to costly compliance" is "to run the risk of serious civil . . . penalties," its action is final (citation omitted)). Accordingly, NHTSA's July 26, 2023, letters, and those it intends to send the Distributors' customers, carry legal consequences and satisfy the second *Bennett* factor.

As the district court noted, an agency's action does not carry legal consequences if it merely expresses the agency's "view of the law" or only results in "practical" consequences. *See Sisseston-Wahpeton*, 888 F.3d at 915 (quoting *AT&T Co.*, 270 F.3d at 976) (noting that an agency's expression of "its view of the law" generally "does not inflict injury"); *Louisiana v. U.S. Army Corps of Eng'rs*, 834 F.3d 574, 583 (5th Cir. 2016) (noting that practical consequences do not necessarily stem from final agency action). But NHTSA's July 26, 2023, letters do more than offer "abstract, theoretical, or academic" guidance on the agency's interpretation of the law. *Frozen Food Express v. United States*, 351 U.S. 40, 44 (1956). Rather, NHTSA applied its authoritative interpretation of FMVSS 108 and the Safety Act to reach legal conclusions about the Pulse Modules at issue. *See Firearms Regul. Accountability Coal.*, 112 F.4th at 525; *see also Ipsen Biopharmaceuticals, Inc. v. Azar*, 943 F.3d 953, 959 (D.C. Cir. 2019) (explaining that while agencies often communicate "their interpretations of governing statutory . . . prohibitions in letters . . . without taking final agency action[,]" their letters become final agency action when they apply the agency's "interpretation of the governing law to the specific facts of [a] case" because this "closely resembles an individual adjudication, which is a well-recognized form of final agency action").

Additionally, while the district court rightly noted the Distributors' sales will "drop off substantially" when NHTSA sends letters to their customers, the court's conclusion that this is only a practical harm is inconsistent with "the 'pragmatic' approach the [Supreme] Court has long taken to finality." *Hawkes*, 578 U.S. at 591 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)). Indeed, because NHTSA's July 26, 2023, letters expressly conclude dealers cannot install Pulse Modules without violating the Safety Act, and the letters it intends to send will threaten the Distributors' customers with a nearly $30,000 civil penalty for each Module they install, the "coercive effect" of NHTSA's letters will virtually prohibit the Distributors' customers from installing Pulse Modules. *See Bennett*, 520 U.S. at 169–70 (noting that although the regulated entity was "technically free to disregard the [agency's] Opinion and proceed with its proposed action," the agency's action was final because it was "virtually determinative," due to substantial civil and

criminal penalties).  Thus, NHTSA's letters carry legal consequences.  *See Hawkes*, 782 F.3d at 1002.

Lastly, the district court denied the Distributors' motion for a preliminary injunction based on its legal conclusion that NHTSA's letters do not amount to final agency action.  Because this conclusion was erroneous, the district court abused its discretion.[2]  *See Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citing *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013)).  The Distributors contend we should decide their request for a preliminary injunction as part of this appeal, but they have not shown that this is warranted.  Consequently, we will take the "more common approach" and "remand for the district court to conduct the full analysis in the first instance."  *Id.* at 499–500 (collecting cases).

### III.  Conclusion

For these reasons, we reverse the district court's judgment dismissing this case and remand for further proceedings consistent with this opinion.

KOBES, Circuit Judge, dissenting.

I agree that the July 26 NHTSA letters to the Distributors are the agency's "last word" on whether Pulse Modules violate FMVSS 108, so the first part of the *Bennett* test is met.  *Supra* at 5 (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001)); *see Bennett v. Spear*, 520 U.S. 154, 177 (1997).  But the second is not.

---

[2]The district court did note the Distributors are unlikely to succeed on the merits of their claims in a footnote to its order.  However, its analysis of this factor is cursory and unpersuasive.  Consequently, because the district court did not analyze the other *Dataphase* factors, its analysis does not support its denial of the preliminary injunction. *See Florance*, 721 F.3d at 499–500.

The court says that the Distributors have suffered "direct and appreciable legal consequences" because NHTSA applied its authoritative interpretation of the regulation to specific facts. *Supra* at 6 (quoting *Firearms Regul. Accountability Coal., Inc. v. Garland*, 112 F.4th 507, 525 (8th Cir. 2024)). But not all agency applications of law to facts lead to legal consequences. *See, e.g.*, *AT&T Co. v. EEOC*, 270 F.3d 973, 974–76 (D.C. Cir. 2001) (letters from EEOC "stating that in [the Commission's] view [the plaintiff] had unlawfully discriminated" were not final agency action). An application of law to facts is final action when the determination itself inflicts an injury or forces a party to change its behavior. *Id.* at 975–76; *see also Firearms Regul. Accountability Coal., Inc.*, 112 F.4th at 518 (rule classifying pistols equipped with stabilizing braces as a short-barrel rifle was final agency action because gun owners would have to take action to avoid the risk of prosecution); *Ipsen Biopharmaceuticals, Inc. v. Azar*, 943 F.3d 953, 957 (D.C. Cir. 2019) (letters from the Centers for Medicare and Medicaid Services were final agency action because they "increased [the] risk of prosecution and penalties").

That didn't happen here. When it comes to selling Pulse Modules, NHTSA's letters do not "compel[] affirmative action or prohibit[] otherwise lawful action" by the Distributors. *Supra* at 6 (quoting *Minn. Bankers Ass'n v. FDIC*, 152 F.4th 893, 897 (8th Cir. 2025)). And they don't force the Distributors to "'incur substantial compliance costs,' 'forego what they assert is lawful' activity, 'or risk substantial enforcement penalties.'" *Supra* at 6 (quoting *Hawkes Co. v. U.S. Army Corps of Eng'rs*, 782 F.3d 994, 1000 (8th Cir. 2015)). No one disputes that the Distributors can continue selling Pulse Modules as they have for years.

What the court is really concerned about is that customers might stop buying Pulse Modules if NHTSA continues the regulatory process. There are two responses. First, those customer decisions would result from actions that NHTSA has not yet taken. That means the July 26 letters at issue in this case are not final agency action. *See Parson v. U.S. Dep't of Just.*, 878 F.3d 162, 168 (6th Cir. 2017) ("An agency action is not final if it does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative

-10-

action." (cleaned up)). And second, the market response to future NHTSA regulatory action is a practical consequence, not the kind of legal consequence that makes an agency action final. *See Air Brake Sys., Inc. v. Mineta,* 357 F.3d 632, 645 (6th Cir. 2004) ("[A]dverse economic effects accompany many forms of . . . non-final government action.").

One final point. The court says in a footnote that the district court's analysis of the merits was "cursory and unpersuasive." *Supra* at 9 n.2. As an alternative basis for denying preliminary relief, it was short. But I do not understand the court to say that the government's arguments on the merits are unpersuasive. On remand, the district court may weigh the merits anew.

I respectfully dissent.

_____