**Revised August 31, 2000**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 99-50860

_____

CRAIG CLYMORE, AKA CLIFF G. WILSON

Petitioner-Appellant

versus

UNITED STATES OF AMERICA

Respondent-Appellee

_____

Appeal from the United States District Court
for the Western District of Texas
_____
July 18, 2000

Before WIENER and STEWART, Circuit Judges, and ROSENTHAL, District Judge[1]

WIENER, Circuit Judge:

Plaintiff-appellant Craig Clymore challenges the district court's conclusion that his action to recover property that was administratively forfeited to the United States Customs Service is time-barred. We hold that in this case (1) the statute of limitations applicable in suits against the United States should have been equitably tolled and (2) the doctrine of laches is not applicable. Consequently, we reverse the judgment of the district

_____

[1]District Judge of the Southern District of Texas, sitting by designation.

court and remand to that court for a judicial forfeiture hearing.

## I.

### FACTS AND PROCEEDINGS

Clymore was arrested in 1991 and pleaded guilty in the United States District Court for the District of New Mexico ("D.N.M.") to conspiracy to possess marijuana with the intent to distribute. In 1992, while Clymore was incarcerated, his pickup truck was seized in Austin, Texas by the United States Customs Service. Subsequently, the truck was administratively forfeited to the Customs Service and sold for $1,675. In 1995, approximately three years after the forfeiture, the Customs Service destroyed its forfeiture file.

In 1996, Clymore initiated an action in the D.N.M. seeking the return of numerous items of property, including the truck. Clymore's motion asserted that he had not been served written notice of the forfeiture, as is required.[2] Clymore commenced this action approximately four years after the truck had been seized and forfeited, well within the six-year statute of limitations applicable to suits against the United States. The D.N.M. concluded that Clymore had filed in the wrong venue and it declined

---

[2]See 19 U.S.C. §1607(a). This section requires that written notice of seizure be served on "each party who appears to have an interest in the seized article." A Customs Service Report of Investigation appended to Clymore's motion confirms that the Customs Service knew that the truck in question belonged to Clymore.

to exercise ancillary jurisdiction over his claims, dismissing them instead with prejudice. Clymore appealed to the Tenth Circuit which, with respect to the truck, affirmed the district court's judgment that Clymore should have brought his claim in the district where the truck had been seized — the Western District of Texas ("W.D. Tex.") — not in the district where his criminal case had been prosecuted (the D.N.M.). The Tenth Circuit remanded, however, with instructions that the district court dismiss Clymore's claim <u>without</u> prejudice so that Clymore could re-file in the W.D. Tex.[3]

The Tenth Circuit's decision was handed down in January, 1999, more than six years after Clymore's truck had been seized and administratively forfeited, after the limitations period had run. Clymore nevertheless promptly re-filed in the W.D. Tex. The case was referred to a magistrate judge, who issued a report and recommendation that Clymore's motion for the return of property be denied as time barred or, in the alternative, under the equitable doctrine of laches. The district court dismissed Clymore's motion for the reasons set forth in the magistrate judge's report, and Clymore timely appealed.

Clymore styled his claim as one invoking Fed. R. Crim. P. 41(e), but as the criminal proceeding against him had already concluded when he brought this action, it should have been brought

---

[3]<u>See</u> <u>Clymore v. United States</u>, 164 F.3d 569 (1999).

3

as a civil action for the return of property.[4]  This Circuit and others have held, however, that in such circumstances it is appropriate to treat a _pro se_ petition as one seeking the appropriate remedy.[5]  We therefore treat Clymore's Rule 41(e) motion as a civil action under 28 U.S.C. §1331, seeking the return of property,[6] and treat the district court's denial of that motion as the grant of summary judgment in favor of the government.

## II.

### STATUTE OF LIMITATIONS

We review _de novo_ the district court's ruling that the statute of limitations has run.[7]  The parties agree that in civil actions the statute of limitation for the return of property is supplied by 28 U.S.C. §2401(a),[8] which states that "every civil action

---

[4]_See_ _United States v. Robinson_, 78 F.3d 172, 174 (5th Cir. 1996); _United States v. Giraldo_, 45 F.3d 509, 510-11 (1st Cir. 1995); _Onwubiko v. United States_, 969 F.3d 1392, 1397 (2d Cir. 1992).

[5]_See_ _supra_ n.4.

[6]_See_ _Pena v. United States_, 122 F.3d 3, 4 n.3 (5th Cir. 1997) ("A suit under §1331 invokes the general equity jurisdiction of the federal courts.  The jurisdiction to order suppression or return exists not by virtue of any statute but rather derives from the inherent authority of the court over those who are its officers." (citations and alterations omitted)).

[7]_See_ _Hinsley v. Boudloche (In re Hinsley)_, 201 F.3d 638, 644 (5th Cir. 2000).

[8]_See_ _Polanco v. Drug Enforcement Admin._, 158 F.3d 647, 652-54 (2d Cir. 1997) (holding that a civil action seeking to remedy a procedurally deficient forfeiture is governed by the six year limitations period of §2401(a)); _Boero v. Drug Enforcement Admin._, 111 F.3d 301, 305 n.5 (2d. Cir. 1997) (same).

commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."

The district court determined that the right of action first accrued in Clymore's favor on March 13, 1992, the date his property was seized.  This conclusion is contrary to recent decisions of the Second Circuit which hold that, at the earliest, a cause of action accrues in favor of one seeking the return of property alleged to have been forfeited without sufficient notice on the date that administrative forfeiture proceedings are complete, rather than on the date of the seizure.[9]  Nevertheless, because there is no dispute that the instant forfeiture proceeding was completed only one month after the seizure, and because a mere one-month delay in the accrual of Clymore's action (and therefore in the starting point for the limitations period) is alone insufficient to bring this action within the statute of limitations, we shall assume arguendo that the district court correctly concluded that the limitations period commenced on March 13, 1992, the date on which Clymore's property was seized.

Clymore concedes, as he must, that the instant proceeding was initiated more than seven years after his truck was (1) seized and (2) forfeited.  He contends nevertheless that the statute of limitations should be equitably tolled for the period of

_____

[9]See Adames v. United States, 171 F.3d 728, 731 (2d. Cir. 1999); Polanco, 158 F.3d at 654-55.

5

approximately two years and seven months that his claim was pending in the D.N.M. and in the Tenth Circuit. The government does <u>not</u> argue that equitable tolling is unavailable under the statute of limitations applicable to this case, only that equitable tolling should not be applied on these facts. But, as we have yet to rule on whether equitable tolling is available in suits governed by the limitations period in 28 U.S.C. §2401(a), we address that threshold issue <u>sua sponte</u>.

In <u>Irwin v. Department of Veterans Affairs</u> the Supreme Court sought to eliminate confusion that had resulted from its past pattern of statute-by-statute <u>ad hoc</u> decisions regarding application of equitable tolling to suits against the government.[10] The Court adopted "a more general rule" decreeing that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States."[11] Subsequently, in <u>United States v. Brockamp</u>,[12] the Court encapsulated the general rule set forth in <u>Irwin</u> in the following negatively-phrased question: "Is there good reason to believe that Congress did <u>not</u> want the equitable tolling doctrine to apply?"[13] If, for a given statute of limitations, that question

---

[10]498 U.S. 89 (1990).

[11]<u>Id.</u> at 95-96.

[12]519 U.S. 347 (1997).

[13]<u>Id.</u> at 350 (emphasis added).

6

is answered in the negative, equitable tolling is potentially applicable.

In Perez v. United States we examined whether, in light of Irwin and Brockamp, the limitations period applicable to the Federal Tort Claims Act[14] is subject to equitable tolling and concluded that it is.[15] The limitations period applicable to this case is contained in subsection (a) of that same section. The two reasons cited in Perez in support of the conclusion that §2401(b) is subject to equitable tolling — (1) §2401(b) is a "garden variety" limitations statute, not a highly-technical one like that found in I.R.C. §6511, and (2) allowing equitable tolling would not create an administrative nightmare — apply with equal force to §2401(a). We hold, therefore, that the doctrine of equitable tolling has potential application in suits, like this one, that are governed by the statute of limitations codified at 28 U.S.C. §2401(a).[16] We now turn to the question whether equitable tolling applies under the facts of this case.

Equitable tolling is available when, inter alia, "the claimant has actively pursued his judicial remedies by filing a defective

---

[14]28 U.S.C. §2401(b).

[15]167 F.3d 913, 917 (1999).

[16]Cf. Cedars-Sinai Medical Center v. Shalala, 125 F.3d 765 (9th Cir. 1997) (holding that §2401(a) is not jurisdictional and therefore subject to waiver).

7

pleading during the statutory period."[17]  Clymore urges that he actively pursued his judicial remedies — and therefore tolled the statute of limitations — by timely filing in the D.N.M. a Rule 41(e) motion seeking the return of his property.  The government counters with the two arguments: (1) Clymore should have been "well aware" of where to file his motion because the proper venue is spelled-out in Fed. R. Crim. P. 41(e); (2) after the D.N.M. instructed Clymore where to file his motion, he "chose to wait until the Tenth Circuit disposed of his appeal" rather than abandoning his case in the D.N.M. and re-filing in the W.D. Tex. We reject both of these arguments.

Rule 41(e) provides:

> **(e) Motion for Return of Property.**  A person [seeking the return of seized property for enumerated reasons] may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. . . . (Emphasis added.)

As the Tenth Circuit explained in Clymore's appeal to that court, "[t]here is a split in the circuits regarding whether Rule 41(e) motions must be brought in the district where the property was seized or in the district where the criminal proceedings occurred."[18]  The Second Circuit has held that the district court that had presided over the underlying criminal proceeding had

_____

[17]Perez, 167 F.3d at 917 (quoting Irwin, 498 U.S. at 96).

[18]Clymore v. United States, 164 F.3d 569, 574-75 (10th Cir. 1999).

8

jurisdiction over a Rule 41(e) motion, even after the close of the criminal proceeding and even though the property had been seized in a different district.[19]  The Eighth Circuit has gone even further by holding in at least one case that the district that had presided over the criminal proceeding is the only proper district in which to bring a Rule 41(e) motion, implying that the district of seizure would not have jurisdiction.[20]  In contrast to the Second and Eighth Circuits, the Fourth Circuit has held that the only proper venue for a motion seeking the return of property after the close of the criminal proceeding is district where the property was seized.[21]

Before Clymore's appeal to the Tenth Circuit, the issue was open in both the Tenth and Fifth Circuits.  In Clymore, addressing the issue for the first time, the Tenth Circuit held that "where the underlying criminal proceedings have concluded and the trial court no longer exercises control over the subject property, the proper venue for a Rule 41(e) motion is the district where the property was seized."[22]

Given the unsettled state of the law at the time that Clymore initiated his motion, even an experienced and able attorney would

---

[19]United States v. Giovanelli, 988 F.2d 116, 118 (2d. Cir. 1993).

[20]Thompson v. Covington, 47 F.3d 974, 975 (8th Cir. 1995).  But see United States v. Garcia, 65 F.3d 17, 20 (4th Cir. 1995) (rejecting Thompson).

[21]Garcia, 65 F.3d at 20-21.

[22]Clymore, 164 F.3d at 574-75.

have had to guess as to the proper venue in which to bring the claim. We therefore reject the government's assertion that Clymore should have been "well aware" that the proper venue for his motion was the W.D. Tex., not the D.N.M.

Neither can we accept the government's contention that after the D.N.M. held that it lacked jurisdiction over Clymore's claim —— at which time the statute of limitations had not yet run —— Clymore should have foregone his appeal to the Tenth Circuit, abandoned his claim in the D.N.M., and timely re-filed in the W.D. Tex. As the D.N.M. had dismissed Clymore's claim with prejudice,[23] it was only after the Tenth Circuit's instructions on remand were carried out by the D.N.M.'s dismissal of Clymore's claim without prejudice that Clymore could re-file in the W.D. Tex. Had he filed a motion before that time, his claim would have been barred by res judicata.

"Statutes of limitations are primarily designed to assure fairness to defendants,"[24] and to

> promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence is lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitations and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.[25]

---

[23]Id. at 575.

[24]Burnett v. New York Central Railroad Co., 380 U.S. 424, 428 (1965).

[25]Id. (quoting Order of Railrod Telegraphers v. Railway Express Agency, Inc., 321 U.S. 324, 348-49 (1944)).

It has not been argued, and cannot seriously be, that the government was unfairly surprised when Clymore initiated the instant proceeding. Indeed, the government was aware that Clymore was seeking the return of his property well within the limitations period when it received service of the motion that Clymore filed in the D.N.M. Moreover, by providing for transfer of venue Congress itself has acknowledged the injustice that occurs when a claim timely filed in the wrong venue is dismissed after the statute of limitations has run.[26] Had the D.N.M. transferred Clymore's motion (rather than dismissing it with prejudice), or had the Tenth Circuit instructed that court on remand to transfer it to the W.D. Tex., the "time-consuming and justice-defeating technicalities"[27] that all parties and the courts have encountered for the bulk of this appeal could have been avoided. So too can they be limited henceforth by application of the doctrine of equitable tolling.

In sum, Clymore timely filed his motion in the wrong venue and then promptly re-filed it in the right venue after the statute of limitations had run. Given (1) the uncertainty of the law regarding the proper venue in which to file and (2) the government's awareness, resulting from service of Clymore's motion within the limitations period, that Clymore was seeking the return

---

[26]Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962); 15 Wright, Miller & Cooper, Federal Practice and Procedure §3827 (2d ed. 1986).

[27]Goldlawr, Inc., 369 U.S. at 916.

11

of his truck, the limitations period should be equitably tolled. We hold that the running of the statute of limitations against Clymore was tolled for the period during which his claim was pending before the D.N.M. and the Tenth Circuit, in consequence of which Clymore's motion was timely.

## III.

### LACHES

To establish that Clymore's cause of action is barred by laches the government must show the occurrence of (1) a delay (2) that was not excusable (3) which caused the government undue prejudice.[28] The district court's findings of delay, inexcusability, and prejudice are findings of fact reviewed for clear error.[29]

Even if we assume without deciding that Clymore's delay was not excusable, we conclude that the government has failed to show that it suffered undue prejudice from Clymore's delay in bringing this action. The government argues that it was prejudiced by Clymore's delay because "the United States Customs Service destroys its completed forfeiture cases three years after the file has been closed pursuant to United States Customs Service Interim Records Handbook." As a result of this administrative policy, purely

---

[28]See Geyen v. Marsh, 775 F.2d 1303, 1310 (5th Cir. 1985); Baylor University Medical Center v. Heckler, 758 F.2d 1052, 1057 (5th Cir. 1985).

[29]See Fed. R. Civ. P. 52(a); Geyen, 775 F.2d at 1310.

volitional with the government, the file in Clymore's case was destroyed three years after the forfeiture, <u>but three years before the statute of limitations had run against Clymore</u>. By its unilateral decision to destroy the file, the government prevented itself from offering any evidence that, prior to the forfeiture, Clymore received the notice to which he was entitled. The only record evidence regarding notice is Clymore's affidavit, in which he swears that he received none.

The government advances its conclusion that Clymore's delay thus caused it prejudice. Clymore counters that any prejudice resulting from the destruction of the forfeiture file in this case was of the government's own making, and we agree. It was the government's own policy —— under which it destroys files that pertain to as yet un-barred forfeiture proceedings —— that caused any prejudice, not the timing of Clymore's motion. If we held in the government's favor on this point, we would be permitting the Customs Service —— an administrative agency —— to modify an act of Congress —— the statute of limitations —— by the agency's internal regulations. The Customs Service cannot shrink a congressionally enacted statute of limitations, under the guise of laches, by adopting a policy that precludes the agency from substantiating that it complied with the formal requirements of forfeiture, when the plaintiff challenging the forfeiture initiates proceedings within the limitations period. As the Ninth Circuit held on similar facts, "it was the government's own carelessness," not the

timing of the plaintiff's Rule 41(e) motion, that caused prejudice.[30]

The government argues in the alternative that it was prejudiced by Clymore's delay because the remedy he seeks —— the return of his property —— is impossible, the property having already been sold. This argument is unavailing as Clymore has persistently stated that he would accept damages in lieu of the truck.[31]

We discern nothing that supports the district court's conclusion that Clymore prejudiced the government by the timing of bringing this action. We conclude, therefore, that the district court committed clear error when it found otherwise. Absent a showing of prejudice, laches does not apply.

## IV.

### REMEDY

The government is required by statute to initiate forfeiture proceedings within five years after it learns of the offense giving rise to the forfeiture.[32] In this case, it is undisputed that more than five years have passed since the government learned that Clymore's truck was being used to smuggle marijuana. Therefore,

---

[30]United States v. Marolf, 173 F.3d 1213, 1218-19 (9th Cir. 1999).

[31]Cf. Pena v. United States, 122 F.3d 3, 4 n.2 (5th Cir. 1997) (citing cases to the effect that when forfeited property is destroyed, movant can still seek damages).

[32]19 U.S.C. §1621.

14

unless the statute of limitations running against the government has been tolled for some reason, the government cannot now cause Clymore's property to be forfeited.

The Circuits are split on the proper remedy when there are allegations that an administrative forfeiture was effected without notice to the property owner, and the challenge to the forfeiture proceeding is brought more than five years after the government learns of the offense. Both the Ninth and Tenth Circuits have held that the inadequately-noticed forfeiture is void —— that is, the forfeiture should be vacated and the statute of limitations should be allowed to run against the government, subject to any affirmative defenses available to the government against the running of the statute of limitations (e.g., laches, equitable tolling).[33] The Ninth Circuit reasoned that it is "particularly weary of civil forfeiture statutes, for they impose 'quasi-criminal' penalties without affording property owners all of the procedural protections afforded criminal defendants."[34] In a similar vein, the Tenth circuit reasoned that "[d]ue process protections ought to be diligently enforced, and by no means relaxed, where a party seeks the disfavored remedy of forfeiture."[35]

---

[33]See United States v. Marolf, 173 F.3d 1213, 1216-18 (9th Cir. 1999); Clymore v. United States, 164 F.3d 569, 572-74 (10th Cir. 1999).

[34]Marolf, 173 F.3d at 1217 (quoting United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1068 (9th Cir. 1994)).

[35]Clymore, 164 F.3d at 574.

15

The Second and Sixth Circuits have held, less stringently, that a deficient forfeiture is merely voidable — in other words, that the proper remedy is to restore the plaintiff's right to challenge the forfeiture in the district court. In <u>United States v. Dusenbery</u>,[36] the Sixth Circuit explained that treating the prior forfeiture proceeding as voidable, not void, simply "restore[s] the right which a timely Rule 41(e) notice would have conferred on the [property owner]," i.e., "the right to judicially contest the forfeiture and to put the Government to its proofs under a probable cause standard."[37] We agree with this rationale.[38] We are persuaded that the government is not initiating a "new" forfeiture proceeding and that the five-year statute of limitations[39] is no impediment to

---

[36]201 F.3d 763 (6th Cir. 1999).

[37]<u>Id.</u> at 768.

[38]We do not agree with all of the reasoning underlying <u>Dusenbery</u>, however. There the court suggested that treating a defective forfeiture as void would "encourage property owners to sit on their Rule 41(e) motions until the five-year statute of limitations has run." <u>Id.</u> Either by design or by accident, Congress has given the property owner a longer period within which to sue for the return of property (six years) than it has given the government to commence forfeiture proceedings (five years). 28 U.S.C. §2401(a); 19 U.S.C. §1621. As a result, if the government has not initiated some proceeding within five years, the property owner could turn that inaction to his advantage. But there is nothing inherently wrong with suing toward the end rather than the beginning of a given limitations period: Other things being equal, the last day is as good as the first. A more sensible scheme would assign congruent limitations periods to both parties and thereby eliminate the incentive to delay alluded to by the <u>Deusenbery</u> court, but we perceive that as a decision for Congress, not the courts.

[39]19 U.S.C. §1621.

a judicial forfeiture hearing at this juncture. Under our ruling today, Clymore will get the very same hearing he would have gotten if, following the seizure of his property, the proper procedure had been invoked, i.e., if (1) the government had notified him of the forfeiture,[40] (2) he had properly filed a claim and a cost bond with the government and thereby thwarted the administrative forfeiture,[41] and (3) the government had been forced to initiate a judicial forfeiture proceeding.[42] And, as the prior (albeit notice-defective) administrative forfeiture was an "action . . . commenced [by the government] within five years after the alleged offense was discovered,"[43] it tolled the statute of limitations that otherwise would have run against the government. In other words, we view this as a continuation of the administrative process that was initiated timely by the government.[44] Accordingly, on remand the district court is instructed to conduct a forfeiture hearing, in accordance with the burden-shifting analysis applicable to such

---

[40]Again, the government might have notified him, but as it destroyed its record it could not prove as much. We therefore must assume that Clymore received no notice.

[41]19 U.S.C. §1608.

[42]19 U.S.C. §§1608, 1610; 21 C.F.R. §§1316.76, 1316.78.

[43]19 U.S.C. §1621.

[44]See Dusenbery, 201 F.3d at 768 ("the Government is not required to institute 'new' forfeiture proceedings, and the applicable statute of limitations, §1621, therefore has no bearing.").

17

proceedings.[45]

## V.

## CONCLUSION

For the forgoing reasons the judgment of the district court is reversed and the case remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED.

---

[45]See 19 U.S.C. §1615; Dusenbery, 201 F.3d at 766.