DeSuze et al. v. Ammon et al.

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2020
No. 20-1141

MARY DESUZE, LOUIS GRANT, PETRA MONTGOMERY,
CARLOTA BROWN, LEONARD ANDRE, RENEE AVENT,
ARLENE HIPP, DEBORAH PRIESTER, ANGELA JONES, ELVIA
SCHARSCHMIDT, PAMELA LOCKLEY, for themselves and other
similarly situated current or former tenants of Linden Plaza,
*Plaintiffs-Appellants*,

*v.*

MATT AMMON, Acting Secretary of the United States Department
of Housing and Urban Development, UNITED STATES
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,
LINDEN PLAZA PRESERVATION L.P., LINDEN PLAZA
ASSOCIATES, L.P., NEW YORK CITY DEPARTMENT OF
HOUSING PRESERVATION AND DEVELOPMENT, CITY OF
NEW YORK,
*Defendants-Appellees*,*

---

* Under Fed. R. App. P. 43(c)(2), Matt Ammon is automatically substituted for Ben Carson in his official capacity as Acting Secretary of the Department of Housing and Urban Development. The Clerk of Court is respectfully directed to amend the caption of this matter accordingly.

Appeal from the United States District Court for the
Eastern District of New York
No. 18-cv-180 — Nicholas G. Garaufis, *Judge*.

ARGUED: DECEMBER 10, 2020
DECIDED: MARCH 9, 2021

Before:   CABRANES, PARK, and NARDINI, *Circuit Judges*.

In 2018, former and current tenants of Linden Plaza, a privately owned affordable housing project, filed a complaint challenging the regulatory approval of rent increases a decade earlier by the U.S. Department of Housing and Urban Development and the New York City Department of Housing Preservation and Development. The tenants appeal from a judgment entered March 9, 2020, in the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *Judge*), dismissing their complaint under Fed. R. Civ. P. 12(b)(1) and (6). We conclude that the tenants lack standing to bring one of their claims under the Administrative Procedure Act, and that all of their APA claims are in any event untimely under 28 U.S.C. § 2401(a). We hold that Section 2401(a) is a claims-processing rule rather than a jurisdictional bar, but that the tenants are not entitled to equitable tolling. We similarly conclude that the tenants' claims under 42 U.S.C. § 1983 against the City and its housing authority are untimely and are not saved by the continuing violation doctrine. We therefore **AFFIRM** the judgment of the district court.

ADAM MEYERS, Communities Resist, Brooklyn, NY, *for Plaintiffs-Appellants*.

EDWARD K. NEWMAN (Varuni Nelson, *on the* brief) for Seth D. DuCharme, Acting United States

Attorney for the Eastern District of New York, Brooklyn, NY, *for Defendants-Appellees* Matt Ammon *and* U.S. Department of Housing and Urban Development.

ZOE PHILLIPS (Peter C. Neger, *on the brief*), Morgan, Lewis & Bockius LLP, New York, NY, *for Defendants-Appellees* Linden Plaza Preservation L.P., *and* Linden Plaza Associates, L.P.

AMY MCCAMPHILL (Richard Dearing, John Moore, *on the brief*) for James E. Johnson, Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellees* New York City Department of Housing Preservation and Development *and* City of New York.

WILLIAM J. NARDINI, *Circuit Judge*:

Plaintiffs-Appellants (the "Tenants") are current and former tenants of Linden Plaza, a privately owned affordable housing complex in Brooklyn, New York. In 2007 and 2008, federal and local authorities granted Linden Plaza's application to raise rents, over vocal objections by the Tenants. Years of litigation followed. In this action, the Tenants came to federal court claiming that, back in 2007, Linden Plaza failed to give them notice of important financial details that the project owner had provided housing authorities to justify the proposed rent increases. Had they known about these details, the Tenants say, they would have had even stronger grounds to contest the rent hikes. The Tenants also complain

3

that, as they read the governing regulations, local authorities were supposed to review the rent proposal before it went to the federal authority. The biggest problem for the Tenants' case is that they filed this lawsuit a decade after the rent increases were approved. The statutes of limitations for their claims are much shorter: only three or six years, depending on the claim.

The Tenants' complaint, filed in 2018, alleged claims under state law against Linden Plaza; under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, against the U.S. Department of Housing and Urban Development ("HUD") and its Secretary; and under 42 U.S.C. § 1983 against New York City and its Department of Housing Preservation and Development ("HPD"). The United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *Judge*) granted Defendants-Appellees' motions to dismiss under Fed. R. Civ. P. 12(b)(1) and (6), holding that the Tenants lacked standing to bring one of their APA claims and that all of the Tenants' federal claims were time-barred. The court declined to exercise supplemental jurisdiction over the state-law claims.

The Tenants contest the district court's holding that they lack standing to challenge HUD's process for approving Linden Plaza's application. They further contend that all of their APA claims were timely brought, or at least should be

subject to equitable tolling, and that their Section 1983 claims were timely under the continuing violation doctrine. As explained in more detail below, we hold that the Tenants lack standing for one of their APA claims, and that in any event all of their federal claims are untimely. In particular, we write to clarify that 28 U.S.C. § 2401(a) — the statute of limitations for civil claims brought against the United States — is a claims-processing rule rather than a jurisdictional bar, although that does not help the Tenants because they are not entitled to equitable tolling. We therefore affirm the judgment of the district court.

## I.    Background

In 2007, the Tenants received notice of, and attended a hearing on, Linden Plaza's June 2007 application for approval from HPD and HUD to increase rents (the "HPD Application"). The Tenants did not receive notice of a separate application (the "HUD Application") that Linden Plaza submitted to HUD's Multifamily Regional Center in conformity with then-relevant agency guidance. *See* U.S. Dep't of Hous. & Urb. Dev., Notice H 00-8 (May 16, 2000) ("Notice H 00-8"). The HUD Application contained more detail about the basis for the rent increase, including approximately $140 million in "decoupling" expenses, a term for costs linked to the refinancing of a previously HUD-insured public housing

5

project.[1] The Tenants claim that they were provided only the figures submitted in the HPD Application, and therefore never had notice or an opportunity to comment on the proposed basis for the rent increase submitted separately to HUD — a basis they argue was improper.

In December 2007, HUD approved Linden Plaza's application, and HPD followed suit in March 2008, permitting significant rent increases based in part on the decoupling expenses included in the HUD Application. In April 2011, during discovery in a state-court action challenging these rent increases, Tenants DeSuze and Grant learned that the rent increases were attributable in part to the decoupling expenses in Linden Plaza's HUD Application. In August 2013, during further litigation, the Tenants learned from HUD about specific decoupling-related costs that Linden Plaza had used to justify the higher rents.

On January 11, 2018, the Tenants filed their Complaint in the current litigation, and on June 16, 2018, they filed an Amended Complaint. In addition to

---

[1] In a process called "interest rate payment decoupling," HUD permits private owners of affordable housing projects to cancel the HUD or Federal Housing Administration insurance on the loan, to decouple the federal interest rate subsidy from supporting the original loan, and to utilize that subsidy instead to support new loans for project rehabilitation. *See* U.S. Dep't of Hous. & Urb. Dev., Off. of Recapitalization, Preservation Options for Section 236 Properties, 10–12 (2016). HUD calculates permitted rent levels for such projects based in part on the cost of the debt service for the decoupled loans. *Id.* at 12.

New York statutory and common-law claims against Linden Plaza, the Tenants alleged that HUD departed from agency regulations and violated the APA by approving Linden Plaza's application without pre-approval from HPD, and that New York City and HPD employed a discriminatory policy or practice of favoring preservation transactions at the expense of affordable housing, in violation of Section 1983. Defendants-Appellees filed motions to dismiss, which the district court granted, entering judgment on March 9, 2020. The Tenants filed a timely notice of appeal.

"We review *de novo* a district court's grant of a motion to dismiss, including its legal interpretation and application of a statute of limitations." *Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 865 (2d Cir. 2015). When a district court determines that equitable tolling is inappropriate, we review the legal premises for that conclusion *de novo*, the factual bases for clear error, and the ultimate decision for abuse of discretion. *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 149 (2d Cir. 2013).

## II.    APA Standing to Assert Procedural Rights under 24 C.F.R. § 245.330

Section 706 of the APA instructs reviewing courts to hold unlawful and set aside agency action that fails to observe procedure required by law. 5 U.S.C.

§ 706(2)(D). A party who has suffered an injury from an adverse agency action has standing to challenge the agency's violation of "procedures [that] are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573 n.8 (1992). "[T]o determine whether a procedural violation manifests injury in fact, a court properly considers whether Congress [or the agency] conferred the procedural right in order to protect an individual's concrete interests." *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016). The question, therefore, is whether the Tenants have such a vested procedural right that is designed to protect their concrete interests.

As relevant here, Section 236 of the National Housing Act of 1934 ("NHA") authorizes the HUD Secretary to ensure continuing affordability for tenants by reviewing rent increase proposals from private owners who have refinanced the original mortgage on an affordable housing project. *See* 12 U.S.C. § 1715z-1(a), (e)(1–2). In particular, the Secretary "shall assure" that (1) "tenants have adequate notice of, reasonable access to relevant information about, and an opportunity to comment on [an owner's request for rent increase,]" and (2) "such

comments are taken into consideration." 12 U.S.C. § 1715z-1b(b)(1). [2] HUD

regulations further specify that certain owners of housing projects not insured by

HUD must provide notice to tenants of proposed rent increases, and should

initially submit such proposals to the local housing authority rather than to HUD.

*See* Tenant Participation in Multifamily Housing Projects, 50 Fed. Reg. 32,396-01,

at 32,404 (Aug. 12, 1985) (codified at 24 C.F.R. § 245.330(a)(2)). If the local housing

authority approves the request, it submits the application materials to HUD for

review along with a certification that tenants received notice and consideration. 24

C.F.R. § 245.330(b). In 2000, HUD issued Notice H 00-8, which allows certain

owners to flip the order of approval and start with HUD; these owners apply for

decoupling (and thus rent increases) "by providing a written proposal to the

[HUD] Multifamily Hub having jurisdiction for the project" first, followed by

---

[2] Neither side challenges the district court's conclusion that the Tenants have APA standing to assert their procedural rights under Section 1715z-1b. We address only the Tenants' appeal from the district court's holding that they lack APA standing to challenge HUD's alleged violation of their procedural rights under 24 C.F.R. § 245.330.

approval from the local housing authority. Notice H 00-8 ¶ 9.[3]

The Tenants complain that, in following the procedure set forth in Notice H 00-8, HUD short-circuited initial approval from the local housing authority as required by 24 C.F.R. § 245.330.[4] The Tenants do not suggest that their written comments were not forwarded to HUD or considered by the agency. Indeed, Paragraph 7 of Notice H 00-8 explicitly retains all of Part 245's protections for tenant participation rights. They claim only that HUD should have considered their comments following local certification and approval.

Even assuming that HUD was required to follow the approval sequence laid out in Section 245.330 rather than Notice H 00-8, we nonetheless hold that the Tenants lack standing to challenge that alleged procedural violation. The local-to-federal approval sequence, on its own, is not "designed to protect some threatened concrete interest . . . that is the ultimate basis of [the Tenants'] standing." *Defs. of Wildlife*, 504 U.S. at 573 n.8. Rather, it is the solicitation and consideration of tenant

---

[3] HUD has since replaced Notice H 00-8 with new guidance, but Notice H 00-8 was still in effect at the time of the Linden Plaza application. *See* U.S. Dep't of Hous. & Urb. Dev., Notice H 2013-25 (Aug. 23, 2013).

[4] The Tenants also alleged in their Complaint that HUD's approval of rent increases violated the APA by depriving them of substantive property rights, but on appeal they press only their argument that they have APA standing to assert procedural rights under 24 C.F.R. § 245.330. They have therefore waived any APA standing argument grounded in substantive rights.

comments by both local and federal housing regulators — common to Notice H 00-8 and Section 245.330 — that serves to protect tenants against unjustified rent increases. We note that, even if the Tenants had standing to bring this procedural claim, it — along with their other federal claims — is time-barred, as we explain next.

## III. Statute of Limitations

Under 28 U.S.C. § 2401(a), a civil action against the United States is barred unless "the complaint is filed within six years after the right of action first accrues." We read Section 2401(a) as a claims-processing rule rather than a jurisdictional bar, in harmony with five of our sister circuits. *See Jackson v. Modly*, 949 F.3d 763, 776–78 (D.C. Cir. 2020), *cert. denied sub nom. Jackson v. Braithwaite*, No. 20-19, 2020 WL 6829074 (U.S. Nov. 23, 2020); *Chance v. Zinke*, 898 F.3d 1025, 1029–33 (10th Cir. 2018); *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 813–18 (6th Cir. 2015); *Clymore v. United States*, 217 F.3d 370, 374–75 (5th Cir. 2000)[5]; *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 770–71 (9th Cir. 1997). Like its companion Section 2401(b), Section 2401(a)

---

[5] *See also Louisiana v. U.S. Army Corps of Eng'rs*, 834 F.3d 574, 584 (5th Cir. 2016) (under Section 2401(a), "timeliness does not raise a jurisdictional issue" (citing *Clymore*, 217 F.3d at 374)). *But see Gen. Land Off. v. U.S. Dept. of the Int.*, 947 F.3d 309, 318 (5th Cir. 2020) (holding, without mention of *Clymore* or *Louisiana v. U.S. Army Corps of Engineers*, that Section 2401(a)'s "timing requirement is jurisdictional, because it is a condition of the United States' waiver of sovereign immunity").

11

belongs to the general class of filing deadlines serving as "quintessential claim-processing rules, which seek to promote the orderly progress of litigation, but do not deprive a court of authority to hear a case." *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015) (internal quotation marks and citation omitted).[6] We therefore conclude that Section 2401(a)'s time bar does not divest us of jurisdiction.

Under a straightforward application of Section 2401(a), the Tenants' claims are time-barred. A federal claim generally accrues "once the plaintiff knows or has reason to know of the injury which is the basis of his action," that is, "the allegedly impermissible conduct and the resulting harm." *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994) (internal quotation marks omitted). If the alleged injury stems from a final agency decision, a claim would thus accrue when the plaintiff knows or has reason to know that he has "suffered legal wrong because of the challenged agency action, or is adversely affected or aggrieved by that action within the meaning of a relevant statute" and the "zone of interests" that statute protects. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990) (internal quotation marks and alteration

---

[6] Notably, the three circuits that have unambiguously held that Section 2401(a)'s time bar *is* jurisdictional considered the question before the Supreme Court decided *Kwai Fun Wong*. *See Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334–36 (11th Cir. 2006); *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576–77 (Fed. Cir. 1988); *Konecny v. United States*, 388 F.2d 59, 62 (8th Cir. 1967).

omitted). A claim arising under the APA that alleges a procedural violation generally accrues at "the time the challenged agency action becomes final." *Sai Kwan Wong v. Doar*, 571 F.3d 247, 263 (2d Cir. 2009).[7]

We need not decide here the precise moment when the Tenants' APA claims accrued, because they are time-barred under Section 2401(a) whether they accrued when HUD approved Linden Plaza's rental increase application in 2007 or when the Tenants later learned the basis for approval of the HUD Application. Even accepting *arguendo* the latter view urged by the Tenants, their claims still accrued no later than April 2011, when they learned that the rent increases they experienced beginning in 2008 were attributable to HUD's approval of those increases before their consideration by HPD and based in part on decoupling expenses, of which the Tenants were not given notice. The Tenants allege that this process deprived them of the notice and participation rights guaranteed under 12

---

[7] Our sister circuits have offered qualifications to this general rule. *See Herr*, 803 F.3d at 820-22 (delaying accrual when the plaintiff "does not suffer any injury until *after* the agency's final action"); *Izaak Walton League of Am., Inc. v. Kimbell*, 558 F.3d 751, 759 (8th Cir. 2009) (stating that accrual occurs when the plaintiff "either knew, or in the exercise of reasonable diligence should have known, that he or she had a claim" (quoting *Loudner v. United States,* 108 F.3d 896, 900 (8th Cir. 1997) (internal alteration omitted)); *Stupak-Thrall v. Glickman*, 346 F.3d 579, 584 (6th Cir. 2003) (same). For the reasons stated in the body of our opinion, however, we need not address whether there are circumstances under which a plaintiff's APA claim may accrue after the agency action becomes final.

U.S.C. § 1715z-1b(b), and that, but for this procedural violation, HUD might not have approved the rent increases. But no further factual revelations, beyond those obtained in April 2011, were required for their APA claims to accrue. While the additional details about the 2007 HUD Application that the Tenants subsequently discovered might have *strengthened* their claims, the core elements — lack of notice, consideration of undisclosed decoupling expenses, and an allegedly out-of-sequence approval process — were already known to the Tenants. We reject the Tenants' suggestion that the accrual of an already viable claim is delayed each time new and helpful facts emerge — an exception that would swallow the rule and defeat the purpose of a statute of limitations. Instead, we find the Tenants' APA claims are time-barred even under their own theory because they were brought more than six years after the Tenants learned of HUD's alleged procedural violations.

Nor are the Tenants' APA claims saved by equitable tolling, which we consider because the text of Section 2401(a) "leaves room for such flexibility" and does not "show a clear intent to preclude tolling." *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019). A statute of limitations may be equitably tolled "'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary

way from exercising his rights,'" that is, in "a situation where a plaintiff 'could show that it would have been *impossible* for a reasonably prudent person to learn' about his or her cause of action." *Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002) (quoting *Miller v. Int'l Tel. & Tel. Corp.,* 755 F.2d 20, 24 (2d Cir. 1985)). But that did not happen here. Although the Tenants litigated for years before discovering the exact regulatory process responsible for their rent increases, they found the core of what they were looking for in April 2011, more than six years before they filed this suit. We discern no error in the district court's conclusion that the Tenants' APA claims are not entitled to equitable tolling and are therefore time-barred.

The Tenants' Section 1983 claims were also filed too late. Those claims are subject to a three-year statute of limitations. *See Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015). The Tenants first filed suit in 2018 to challenge HPD's processing of rent increases in 2008 and 2014 — both outside the three-year limitations period. The Tenants contend that the continuing violation doctrine should save their otherwise time-barred claims. As the district court properly concluded, it does not. As an "exception to the normal knew-or-should-have-known accrual date" rule, the continuing violation doctrine treats "a series of separate acts that collectively

constitute one unlawful practice" as a single composite entity when the resulting claims "by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (internal quotation marks and alteration omitted)). Where, by contrast, plaintiffs complain of "discrete acts" separated in time, the usual limitations rule applies. *Id.* The Tenants' Section 1983 claims belong to the latter, time-barred, category. Although the Tenants allege that HPD's approval of rent increases in 2008 and 2014 stemmed from the City's consistent pro-preservation affordable housing policy, each of those claims accrued independently through a discrete approval process, and each approval occurred more than three years before the Tenants filed suit in 2018. The ensuing injuries allegedly caused the Tenants continuing harms extending into the limitations period, but "a continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred . . . act." *Harris*, 186 F.3d at 250. The district court therefore properly dismissed the Tenants' Section 1983 claims as barred by the statute of limitations.

16

\*     \*     \*

In sum, we hold that:

1. The Tenants lack standing for their APA procedural violation claim against HUD based on the sequence of regulatory approval because the order of the approval process was not designed to protect the Tenants' concrete interests in notice and participation.

2. All of the Tenants' APA claims are untimely under Section 2401(a) because they accrued, at the latest, in April 2011 — that is, when the Tenants learned that Linden Plaza's HUD application was based on decoupling expenses — which is more than six years before they filed their complaint.

3. Section 2401(a) is a claims-processing rule rather than a jurisdictional bar. We therefore have jurisdiction to consider whether the Tenants' claims are subject to equitable tolling, but we conclude that they are not.

4. The Tenants' Section 1983 claims also are untimely, and the continuing violation doctrine does not save those claims because each arises from a discrete approval process.

Accordingly, we **AFFIRM** the judgment of the district court dismissing the Tenants' claims.