# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1639

_____

North Dakota Retail Association; North Dakota Petroleum Marketers Association; Corner Post, Inc.

*Plaintiffs - Appellants*

v.

Board of Governors, of the Federal Reserve System

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of North Dakota - Western

_____

Submitted: October 19, 2022
Filed: December 14, 2022

_____

Before SMITH, Chief Judge, BENTON and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

The North Dakota Retail Association and the North Dakota Petroleum Marketers Association sued the Board of Governors of the Federal Reserve System, alleging that fees for merchants in debit card transactions violated the Durbin

Amendment. The district court[1] dismissed the case, ruling that the claims were barred by the statute of limitations. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

NDRA and NDPMA filed claims against the Board under the Administrative Procedures Act, 5 U.S.C. § 704. They alleged that the interchange and processing fees paid by merchants in debit card transactions are arbitrary and capricious, contrary to the APA, and in violation of the Durbin Amendment to the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010. The Durbin Amendment authorized the Board to regulate "any interchange fee that an issuer may receive or charge with respect to an electronic debit transaction[,]" requiring such fees to be "reasonable and proportional to the cost incurred by the issuer with respect to the transaction." **15 U.S.C. § 1693o-2(a)(1), (2)**. The Board then issued Regulation II, setting a maximum interchange fee of 21 cents per transaction and an ad valorem allowance of 0.05 percent of the transaction (to account for fraud loss). *See* **Regulation II, Debit Card Interchange Fees and Routing**, 76 Fed. Reg. 43,394, 43,420 (July 20, 2011).

Other merchant associations challenged the validity of Regulation II. *See NACS V. Bd. of Governors of Fed. Rsrv. Sys.*, 958 F. Supp. 2d 85 (D.D.C. 2013) (*NACS I*). The district court ruled that Regulation II violated the plain language of the Durbin Amendment. The D.C. Circuit reversed, holding "that the Board's rules generally rest on reasonable constructions of the statute." *NACS v. Bd. of Governors of Fed. Rsrv. Sys.*, 746 F.3d 474, 477 (D.C. Cir. 2014) (*NACS II*). However, the circuit court required the Board to clarify its exercise of discretion in "determining that transactions-monitoring costs properly fall outside the fraud-prevention adjustment." *Id.* at 493. The Board published its clarification on August

---

[1]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota.

14, 2015 ("Clarification"), which explained its treatment of transactions-monitoring costs without altering or amending Regulation II. *See* **Clarification, Debit Card Interchange Fees and Routing**, 80 Fed. Reg. 48,684, 48,685 (Aug. 14, 2015).

On April 29, 2021, NDRA and NDPMA filed the original complaint here, raising a facial challenge to Regulation II as a violation of the APA that is contrary to law, arbitrary, and capricious. The Board moved to dismiss based on the statute of limitations. NDRA and NDPMA amended the complaint, adding Corner Post, Inc. as a plaintiff (collectively with NDRA and NDPMA, "Merchants"). Incorporated in 2017, Corner Post opened for business as a convenience store in 2018. The Board again moved to dismiss for lack of subject matter jurisdiction and failure to state a claim under the statute of limitations.

The district court dismissed, finding (i) the Clarification did not constitute a final agency action to renew the statute of limitations, (ii) the statute of limitations on Corner Post's claims began to run with the publication of Regulation II in 2011, and (iii) the Merchants' claims did not warrant equitable tolling. The Merchants appeal.

II.

The Merchants allege that the statute of limitations renewed when the Board published the Clarification in 2015. This court "review[s] de novo whether a statute of limitations bars a party's claim." **Humphrey v. Eureka Gardens Pub. Facility Bd.**, 891 F.3d 1079, 1081 (8th Cir. 2018).

"Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." **5 U.S.C. § 704**. Under the APA, "[t]wo conditions must be satisfied for an agency action to be final." **Sisseton-Wahpeton Oyate of Lake Traverse Res. v. Corps of Eng'rs**, 888 F.3d 906, 914-15 (8th Cir. 2018). First, the action cannot be tentative or interlocutory in nature and "must mark the 'consummation of the agency's

-3-

decisionmaking process.'" *Id.* at 915, *quoting* **Bennett v. Spear**, 520 U.S. 154, 177-78 (1997). "Second, 'the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.'" **Id.**, *quoting* **Bennett**, 520 U.S. at 178. "To constitute a final agency action, the agency's action must have inflicted 'an actual, concrete injury' upon the party seeking judicial review." **Id.**, *quoting* **Williamson Cty. Reg'l Planning v. Hamilton Bank**, 473 U.S. 172, 193 (1985).

The Clarification was not a final agency action. The D.C. Circuit found nothing unlawful in Regulation II. *See* **NACS II**, 746 F.3d at 493. Rather, the court upheld Regulation II as "a reasonable interpretation of the statute." **Id.** ("vacating [Regulation II] would lead to an entirely unregulated market . . . we see no need to vacate."). The court ordered publication of a clarification so the Board could "articulate a reasonable justification for determining that transactions-monitoring costs properly fell outside the fraud-prevention adjustment." **Id.**

The Clarification was not the final "consummation of the agency's decisionmaking process." **Sisseton-Wahpeton Oyate**, 888 F.3d at 915. It did not modify Regulation II or create any additional rights or obligations on behalf of the Merchants. *See* **id.** It did not create a new fee or expand any existing fees, nor did it "inflict[] 'an actual, concrete injury' upon the [Merchants]." **Id.**, *quoting* **Williamson Cty. Reg'l Planning**, 473 U.S. at 193. The Merchants' claims relate to the unmodified provisions of Regulation II as originally published on July 20, 2011. The Clarification did nothing to change Regulation II, which remains the final agency action since its publication in 2011.

The Merchants also argue that, even if the Clarification is not a final agency action, it renewed the statute of limitations under the D.C. Circuit's reopening doctrine. *See* **CTIA – The Wireless Ass'n v. FCC**, 466 F.3d 105, 110 (D.C. Cir. 2006) ("The reopening doctrine, well-established in [the D.C.] [C]ircuit is an exception to statutory limits on the time for seeking review of an agency decision" when an agency conducts "a later rulemaking," "actually reconsider[s] the rule," or

"open[s] the issue up anew." (quotations omitted)). This court has not adopted or even referenced the D.C. Circuit's reopening doctrine. More importantly, the Supreme Court "has never adopted it, and the doctrine appears to be inapposite to the question of final agency action." *Biden v. Texas*, 142 S. Ct. 2528, 2545 n.8 (2022). Even if the reopening doctrine has any validity, the Clarification is not a "later rulemaking" and did not "actually reconsider the rule," or "open[] the issue up anew." *CTIA*, 466 F.3d at 110.

III.

The Merchants allege that their facial challenge to Regulation II first accrued when Corner Post opened in 2018, rather than when Regulation II was published in 2011.

Claims arising under the APA are subject to a six-year statute of limitations. *See* **5 U.S.C. § 704**; **28 U.S.C. § 2401(a)** ("[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."). *See also* ***Izaak Walton League of Am., Inc. v. Kimbell***, 558 F.3d 751, 758 (8th Cir. 2009) ("The statute of limitations set forth in 28 U.S.C. § 2401(a) . . . applies" to "claims under the [APA]."). "A claim against [the] United States first accrues on the date when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Id.* at 759. The "standard rule [is] that accrual occurs when the plaintiff has a complete and present cause of action." ***Rassier v. Sanner***, 996 F.3d 832, 836 (8th Cir. 2021), *quoting* ***Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California***, 522 U.S. 192, 201 (1997).

This court has not explicitly addressed whether a plaintiff which comes into existence more than six years after the publication of a final agency action is barred from bringing an APA facial challenge to the agency action. But, in *Izaak Walton*, this court held that the six-year statute of limitations accrued upon publication of the regulation and barred plaintiffs' facial challenge—although one plaintiff was

founded 16 years later. *See **Izaak Walton***, 558 F.3d at 762. The *Izaak Walton* case did not directly address the issue because the complaint there was not filed until 10 years after plaintiff's founding. *See **id.*** The *Izaak Walton* case did hold that facial challenges to agency actions accrue upon the publication of the agency action in the Federal Register. *See **id.*** at 761 ("Wilderness Watch's claims accrued no later than April 4, 1980, when the Forest Service published in the Federal Register the legal description and maps for the BWCAW.").

Other circuit courts hold that APA claims accrue, and the statute of limitations begins to run, when an agency publishes a regulation. *See, e.g., **Trafalgar Cap. Assocs. v. Cuomo***, 159 F.3d 21, 34 (1st Cr. 1998) ("A complaint under the APA for review of an agency action is a civil action that must be filed within the six year limitations period set forth in 28 U.S.C. § 2401(a)."); ***Wong v. Doar***, 571 F.3d 247, 263 (2d Cir. 2009) ("Under the APA, the statute of limitations begins to run at the time the challenged agency action becomes final."); ***Paucar v. AG of the United States***, 545 Fed. Appx. 121, 124 (3d Cir. 2013) ("Generally, the right of action first accrues on the date of the final agency action."); ***Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.***, 983 F.3d 671, 681-82 (4th Cir. 2020) (holding that "when 'plaintiffs bring a facial challenge to an agency [action] . . . the limitations period begins to run when the agency publishes the regulation'" (quoting ***Hire Order Ltd. v. Marianos***, 698 F.3d 168, 170 (4th Cir. 2012)); ***Sierra Club v. Slater***, 120 F.3d 623, 631 (6th Cir. 1997) ("Under the APA, a right of action accrues at the time of 'final agency action.'" (quoting 5 U.S.C. § 704)); ***Shiny Rock Min. Corp. v. United States***, 906 F.2d 1362, 1363 (9th Cir. 1990) (declining "to accept the suggestion that standing to sue is a prerequisite to the running of the limitations period" because "[t]o hold otherwise would render the limitation on challenges to agency orders we adopted . . . meaningless"); ***Vincent Murphy Chevrolet Co. v. United States***, 766 F.2d 449, 452 (10th Cir. 1985) ("To hold that the twelve-year [quiet title act] statute of limitations did not begin to run until conditions began changing would give rise to an interpretation of the term 'claim' under § 2409a(f) which would extend the limitations period indefinitely."); ***Ctr. for Biological Diversity v. Hamilton***, 453 F.3d 1331, 1334-35 (11th Cir. 2006) (rejecting plaintiffs'

argument that "the passage of each day creates an additional cause of action, which triggers anew the running of the six-year limitations period"); ***Harris v. FAA***, 353 F.3d 1006, 1010 (D.C. Cir. 2004) ("The right of action first accrues on the date of the final agency action."); ***Preminger v. Sec'y of Veterans Affairs***, 498 F.3d 1265, 1272 (Fed. Cir. 2007) ("[A] cause of action seeking judicial review under the APA accrues at the time of final agency action.").

The Merchants rely on a Sixth Circuit case, which held that a challenge to an agency action first accrued upon injury to the plaintiff rather than publication of the agency action. *See **Herr v. United States Forest Serv.***, 803 F.3d 809, 822 (6th Cir. 2015) ("When a party *first* becomes aggrieved by a regulation that exceeds an agency's statutory authority more than six years after the regulation was promulgated, that party may challenge the regulation without waiting for enforcement proceedings."). Rejecting the claim that "a right of action under the APA accrues upon final agency action regardless of whether the action aggrieved the plaintiff," the court in *Herr* reasoned:

> But that contradicts the text of the statute and Supreme Court precedent to boot. Only "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," 5 U.S.C. § 702 says, "is entitled to judicial review thereof." If a party cannot plead a "legal wrong" or an "adverse[] [e]ffect[]," *id.*, it has no right of action. No doubt, the party must *also* plead final agency action, *see* 5 U.S.C. § 704, but that is another necessary, but not by itself a sufficient, ground for stating a claim under the APA.
>
> Some courts, it is true, have suggested that an APA claim first accrues on the date of the final agency action. . . . These cases all involved settings in which the right of action happened to accrue at the same time that final agency action occurred, because the plaintiff either became aggrieved at that time or had already been injured. . . . But that is not the case when, as here, the party does not suffer any injury until *after* the agency's final action.

***Herr***, 803 F.3d at 819-20 (citations omitted). But *Herr* did not distinguish between as-applied and facial challenges.

Assessing the time of accrual of rights of action, other circuits distinguish between as-applied and facial challenges under the APA. The Fourth Circuit has held that the right of action for facial challenges to a final agency action accrues upon publication of the regulation, not when plaintiffs later became federally licensed firearm dealers and suffered injury. *See **Hire Order Ltd. v. Marianos***, 698 F.3d 168, 170 (4th Cir. 2012) ("When, as here, plaintiffs bring a facial challenge to an agency ruling—[they] do not deny theirs is a facial challenge—the limitations period begins to run when the agency publishes the regulation." (citations omitted)). The Fifth Circuit agrees. *See **Dunn-McCampbell Royalty Int. v. National Park Serv.***, 112 F.3d 1283, 1287 (5th Cir. 1997) ("On a facial challenge to a regulation, the limitations period begins to run when the agency publishes the regulation in the Federal Register."). The D.C. Circuit agrees. *See **Citizens Alert Regarding the Env't v. EPA***, 102 Fed. Appx. 167, 168-69 (D.C. Cir. 2004) ("Under the six-year statute of limitations for actions against the United States, 28 U.S.C. § 2401(a), any facial challenge to EPA's approval of Pennsylvania's environmental review process is time-barred."). *Cf. **Wind River Mining Corp. v. United States***, 946 F.2d 710, 715 (9th Cir. 1991) ("[I]f the person wishes to bring a policy-based facial challenge to the government's decision, that too must be brought within six years. . . . The government's interest in finality outweighs a late-comer's desire to protest the agency's action as a matter of policy or procedure.") (acknowledging "[i]f, however, a challenger contests the substance of an agency decision as exceeding constitutional or statutory authority, the challenger may do so later than six years following the decision by filing a complaint for review of the adverse application of the decision to the particular challenger").

This court concludes that, when plaintiffs bring a facial challenge to a final agency action, the right of action accrues, and the limitations period begins to run, upon publication of the regulation. This comports with this court's precedent. *See **Izaak Walton***, 558 F.3d at 759 ("A claim against [the] United States first accrues on

the date when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." (quotation omitted)); *id.*, at 761 ("[T]he appearance of regulations in the Federal Register g[ives] legal notice of their content to all affected thereby." (quoting *United States v. Wiley's Cove Ranch*, 295 F.2d 436, 447 (8th Cir. 1961))). *See also Rassier*, 996 F.3d at 836 (The "standard rule [is] that accrual occurs when the plaintiff has a complete and present cause of action." (quotation omitted)). For facial challenges, liability is fixed and plaintiffs have a complete and present cause of action upon publication of the final agency action.

In this case, the Merchants challenge the collection of interchange fees by third parties authorized to collect interchange fees by Regulation II. *See* **Regulation II**, 76 Fed. Reg. 43,394. The Merchants seek to invalidate the text of Regulation II in all applications. Thus, the Merchants bring a facial challenge to Regulation II, which is untimely. *See* **28 U.S.C. § 2401(a)**.

Plaintiffs, like Corner Post, with untimely facial challenges may have a remedy. "In some cases, a plaintiff may escape the statute of limitations by establishing that he or she is eligible for equitable tolling." *Sisseton-Wahpeton Oyate*, 888 F.3d at 917. "Equitable tolling allows for an extension of the prescribed limitations period 'when the plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of his [or her] claim.'" *Id.* "But not every statute of limitations can be equitably tolled." *Id.* "While courts presume that a statute of limitations permits equitable tolling in suits against the United States, the presumption is rebuttable." *Id.* "One way for the government to rebut the presumption is to show that Congress made the statute of limitations jurisdictional," which "cannot be equitably tolled." *Id.*, *citing United States v. Kwai Fun Wong*, 575 U.S. 402, 408 (2015) (holding that the statute of limitations for private civil actions in 28 U.S.C. § 2401(b) was *not* jurisdictional and thus can be equitably tolled).

This court has "long considered § 2401(a) a jurisdictional bar." *Id.* at 917 n.4, *citing* **Konecny v. United States**, 388 F.2d 59, 61-62 (8th Cir. 1967). Although the Supreme Court has not addressed § 2401(a), all the circuits to do so since *Kwai Fun Wong* have held that § 2401(a)'s time bar is not jurisdictional. *See, e.g.,* **Desuze v. Ammon**, 990 F.3d 264, 269-70 (2d Cir. 2021); **Jackson v. Modly**, 949 F.3d 763, 776-78 (D.C. Cir. 2020); **Chance v. Zinke**, 898 F.3d 1025, 1029-33 (10th Cir. 2018); **Matushkina v. Nielsen**, 877 F.3d 289, 292 n.1 (7th Cir. 2017); **Herr**, 803 F.3d at 814-18. *See also* **Clymore v. United States**, 217 F.3d 370, 374 (5th Cir. 2000) (holding, before *Kwai Fun Wong*, that § 2401(a) was not a jurisdictional bar); **Cedars-Sinai Med. Ctr. v. Shalala**, 125 F.3d 765, 769-71 (9th Cir. 1997) (same). Based on *Kwai Fun Wong* and the persuasive opinions of the other circuits, this court now holds that § 2401(a) is not a jurisdictional bar. *See* **Kwai Fun Wong**, 575 U.S. at 410 ("[M]ost time bars are nonjurisdictional. . . . Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it."); **Desuze**, 990 F.3d at 269-70 ("Like its companion Section 2401(b), Section 2401(a) belongs to the general class of filing deadlines serving as 'quintessential claim-processing rules, which seek to promote the orderly progress of litigation, but do not deprive a court of authority to hear a case.'" (quoting **Kwai Fun Wong**, 575 U.S. at 410)); **Herr**, 803 F.3d at 815-17 (analyzing the relevant legislative history of 28 U.S.C. §§ 2401(a), (b), and 2501); **Chance**, 898 F.3d at 1031-33 (same); **Jackson**, 949 F.3d at 777 ("In *Kwai Fun Wong*, the Court flatly rejected" . . . "the belief that [§ 2401(a)] is attached to the government's waiver of sovereign immunity, and as such must be strictly construed."). *See generally* **United States v. Taylor**, 803 F.3d 931, 933 (8th Cir. 2015) ("[A] prior panel ruling does not control when the earlier panel decision is cast into doubt by an intervening Supreme Court decision.").

The Merchants' equitable tolling argument fails on its merits. This court reviews "a denial of equitable tolling *de novo*" and "underlying fact findings for clear error." **English v. United States**, 840 F.3d 957, 958 (8th Cir. 2016). A plaintiff is entitled to equitable tolling only by showing "'(1) that he [or she] has been pursuing his [or her] rights diligently, and (2) that some extraordinary circumstances

stood in his [or her] way' and prevented timely filing." ***Holland v. Florida***, 560 U.S. 631, 649 (2010), *quoting* ***Pace v. DiGuglielmo***, 544 U.S. 408, 418 (2005).

NDRA and NDPMA had notice of the publication of Regulation II in 2011, submitting a comment letter in February 2011.  NDRA and NDPMA did not sue the Board until more than ten years later.  Confronted with the Board's first motion to dismiss, NDRA and NDPMA amended the complaint on July 23, 2021, adding Corner Post as plaintiff.  Incorporated on June 26, 2017, Corner Post opened for business in March 2018, immediately paying the disputed interchange fees in all its debit card transactions.  Corner Post does not explain why it waited more than three years to file this lawsuit.

The Merchants fail to show that they have been pursuing their rights diligently.  *See* ***Holland***, 560 U.S. at 649.  Because the Board published Regulation II in 2011 and the Merchants are not eligible for equitable tolling, the Merchants' facial challenge to Regulation II remains time-barred by the six-year statute of limitations under 28 U.S.C. § 2401(a).

* * * * * * *

The judgment is affirmed.

_____