21-1024-cv
*Edwards v. McMillen Cap., LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

**At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of November, two thousand twenty-two.**

PRESENT:
> ROBERT D. SACK,
> RICHARD C. WESLEY,
> JOSEPH F. BIANCO,
> *Circuit Judges.*

_____

Paul Edwards,

> *Plaintiff-Appellant,*

> v.                                                                    21-1024-cv

McMillen Capital, LLC,

> *Defendant-Appellee.*

_____

FOR PLAINTIFF-APPELLANT:          Paul Edwards, *pro se*, Cromwell, CT.

FOR DEFENDANT-APPELLEE:          Ander S. Knott, Knott & Knott, LLC, Cheshire, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Underhill, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Paul Edwards, proceeding *pro se*, appeals the district court's judgment dismissing his claims. Based on alleged misconduct connected to a 2012 mortgage loan, Edwards sued defendant McMillen Capital, LLC, ("McMillen") in February 2018, asserting that McMillen violated the Truth in Lending Act, 15 U.S.C. §§ 1601–1667f ("federal TILA"), the Connecticut Truth in Lending Act, Conn. Gen. Stat. §§ 36a-675–36a-686 ("Connecticut TILA), and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a–42-110q ("CUTPA"). He also brought state law negligence, negligent infliction of emotional distress, and breach of the implied covenant of good faith and fair dealing claims. The district court granted McMillen's motion to dismiss the amended complaint, under Federal Rule of Civil Procedure 12(b)(6), on the grounds that Edwards's federal and Connecticut TILA and CUTPA claims were untimely, and his remaining causes of action did not state a claim for relief. We assume the parties' familiarity with the underlying facts and procedural history—which we already addressed in our prior precedential opinion, *see Edwards v. McMillen Capital, LLC*, 952 F.3d 32, 33–35 (2d Cir. 2020) (per curiam)—as well as the issues now on appeal, which we discuss only as necessary to explain our decision to affirm.

## I. Timeliness of Edwards's TILA and CUPTA Claims

On an appeal from a Rule 12(b)(6) dismissal, this Court reviews a district court's "legal conclusions, including its interpretation and application of a statute of limitations . . . *de novo*." *City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011). "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a

statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014). Moreover, "[w]hen a district court determines that equitable tolling is inappropriate, we review the legal premises for that conclusion *de novo*, the factual bases for clear error, and the ultimate decision for abuse of discretion." *DeSuze v. Ammon*, 990 F.3d 264, 268 (2d Cir. 2021).

## A. Federal and Connecticut TILA

Edwards's federal and Connecticut TILA claims are time barred. Federal TILA aims to protect consumers "by assuring a meaningful disclosure of credit terms." *Strubel v. Comenity Bank*, 842 F.3d 181, 186 (2d Cir. 2016) (internal quotation marks and citation omitted). Under the federal law, many claims must be brought within "one year from the date of the occurrence of the violation," although certain actions are subject to a three-year statute of limitations. *See* 15 U.S.C. § 1640(e). Connecticut TILA's statute of limitations is the same as the federal limitations period. Conn. Gen. Stat. § 36a-683(b).

Even under the longer three-year limitations period, Edwards's claims were brought too late. The mortgage was executed on April 30, 2012, and Edwards filed his earliest lawsuit in state court on June 24, 2015, three years and two months later. This suit was not filed until February 2018—significantly later still. Therefore, the federal and Connecticut TILA claims are barred by the statute of limitations.

Edwards contends that these claims are nevertheless timely because of the "discovery rule," which allows the statute of limitations to commence on the date the plaintiff discovered, or reasonably could have discovered, the alleged violation. Edwards does not challenge the district court's determination that the discovery rule applies only to open-end transactions and not closed-

3

end transactions. *See, e.g.*, *Latouche v. Wells Fargo Home Mortg. Inc.*, 752 F. App'x 11, 13 (2d Cir. 2018) (summary order) ("While this Court has not spoken directly on the issue, among lower courts in this circuit, [i]t is well-settled law that in closed-end credit transactions, like [a mortgage loan], the date of the occurrence of violation is no later than the date the plaintiff enters the loan agreement or, possibly, when defendant performs by transmitting the funds to plaintiffs." (internal quotation marks and citation omitted)). Instead, Edwards argues that the district court erred in concluding that his loan agreement was a closed-end transaction. We find his argument unpersuasive. The district court correctly held that, because the alleged loan transaction at issue did not contemplate future disbursals or repeated transactions, it was a closed-end transaction to which the discovery rule does not apply.

These claims fare no better under the rescission-based statute of limitations. If a creditor fails to "conspicuously disclose" rescission rights, a consumer has three years to rescind the transaction. *See* 15 U.S.C. §§ 1635(a), (f); Conn. Gen. Stat. § 36a-683(e). The three-year extension is measured from the "date of consummation of the transaction." 15 U.S.C. § 1635(f). This is defined as "the time that a consumer becomes contractually obligated on a credit transaction, a matter decided by reference to state law." *Smith v. Wells Fargo Bank, N.A.*, 666 F. App'x 84, 86 (2d Cir. 2016) (summary order) (internal quotation marks and citation omitted) (finding under Connecticut law that the date of consummation was, at latest, plaintiff's transmittal of the executed documents to the lender). Here, Edwards was contractually obligated when he executed the mortgage documents on April 30, 2012. Therefore, his claims would still be untimely under the rescission-based statute of limitations.

Finally, the district court correctly determined that there was no basis for equitably tolling

4

the statute of limitations. Equitable tolling is appropriate on a rare occasion where "extraordinary circumstances prevented a party from timely performing a required act, and . . . the party acted with reasonable diligence throughout the period he [sought] to toll." *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (internal quotation marks and citation omitted). Here, Edwards does not allege any "extraordinary circumstances" warranting equitable tolling, and reasonable diligence by Edwards would have revealed the alleged violation when he signed the mortgage note in April 2012.

Accordingly, the federal and Connecticut TILA claims were properly dismissed as time barred.

## B. CUTPA

The CUTPA claim is also time barred. CUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). A plaintiff may not bring a CUTPA claim "more than three years after the occurrence of a violation." Conn. Gen. Stat. § 42-110g(f). Edwards's claim, stemming from the 2012 loan transaction, is clearly beyond this three-year period.

Moreover, the continuing course of conduct doctrine does not toll the statute of limitations here. State law claims are governed by state tolling rules, *see Schermerhorn v. Metro. Transp. Auth.*, 156 F.3d 351, 354 (2d Cir. 1998) (per curiam), and Connecticut courts apply the continuing course of conduct doctrine only where a defendant: "(1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty," *Witt v. St. Vincent's Med. Ctr.*, 252 Conn. 363, 370 (2000). A continuing duty exists where there is "evidence of either a special relationship between the

5

parties . . . or some later wrongful conduct of a defendant related to the prior act [or omission]." *Fichera v. Mine Hill Corp.*, 207 Conn. 204, 210 (1988).

Here, there are no allegations that suggest Edwards and McMillen were in a special fiduciary relationship beyond a standard borrower-lender arrangement. *See Southbridge Assocs., LLC v. Garofalo*, 53 Conn. App. 11, 19 (1999) (holding that, because a "lender has the right to further its own interest in a mortgage transaction and is not under a duty to represent the customer's interest," no fiduciary relationship exists in a borrower-lender relationship). Moreover, although Edwards seeks to rely on McMillen's alleged ongoing failure to make the requisite TILA disclosures after advancements of the loan, that allegation of continuing omission does not constitute additional misconduct from the time of the loan that would trigger application of this doctrine. *See Flannery v. Singer Asset Fin. Co.*, 312 Conn. 286, 312–13 (2014) (concluding that continuing course of conduct doctrine did not apply where plaintiff "has not alleged or pointed to any evidence of any duty owed by, or further misconduct [or a new omission] on the part of, the defendant following [the principal] sale"). In sum, the district court correctly determined that no exceptions to the limitation period apply that would render the CUPTA claim timely, and thus properly dismissed the CUPTA claim.

## II.    Remaining State Law Claims

The district court granted McMillan's motion to dismiss the remaining state law claims—for negligence, negligent infliction of emotional distress, and breach of the implied covenant of good faith and fair dealing—concluding that McMillan failed to state plausible claims upon which

6

relief could be granted.   We agree.[1]

As noted above, we review a district court's dismissal under Rule 12(b)(6) *de novo*.   *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).   To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   In making this plausibility assessment under Rule 12(b)(6), we may consider "facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings[,] and matters of which judicial notice may be taken . . . ."[2]   *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993).   In addition, "[w]e liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest."   *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) (internal quotation marks and citation omitted).   Our substantive analysis of a state-law claim is governed by the decisions of a state's highest court, although we also "look to the rulings of the state's lower courts as providing important data points for understanding state law."   *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp.*, 22 F.4th 103, 120 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2852 (2022).

---

[1]   McMillan argues, in the alternative, that these remaining state claims are also untimely.   The district court rejected that argument and determined that, although Edwards brought the claims outside the state's three-year statute of limitations for tort actions, he could avail himself of Connecticut's savings statute to the extent these claims arose out of the same causes of action asserted in his prior state court proceeding. *See* Conn. Gen. Stat. § 52-592.   Because we conclude that the district court properly dismissed these remaining state causes of action for failure to state a plausible claim, we need not address McMillan's alternative argument on timeliness.

[2]   Here, Edwards referenced many documents in his amended complaint, including the mortgage note and loan commitment letter, and thus the district court properly considered those documents in ruling on the Rule 12(b)(6) motion.

First, the amended complaint did not state a claim for negligence because it failed to plausibly allege the existence of a duty of care based upon the mortgage agreement. *See Grenier v. Comm'r Transp.*, 306 Conn. 523, 538–39 (2012). In the alternative, Edwards argues that a duty of care arises from the doctrine of statutory negligence—Connecticut's term for negligence *per se*. *See Webb v. Czyr Const. Co.*, 172 Conn. 88, 93 n.3 (1976). "Two elements must coexist" before a plaintiff can recover on the ground of statutory negligence: (1) "a plaintiff must be within the class of persons for whose benefit and protection the statute in question was enacted"; and (2) "a plaintiff must prove that the violation of the statute . . . was a proximate cause of his injuries." *Coughlin v. Peters*, 153 Conn. 99, 101 (1965). Edwards asserts that he can establish statutory negligence because he is a consumer protected under several statutes that aim to prevent the injury he suffered (*i.e.*, McMillen's "fraudulent scheme"), such as the Connecticut TILA and CUPTA. However, as discussed above, we have already concluded these statutory claims are untimely, and Edwards cannot re-cast these same claims as statutory negligence claims under Connecticut law to circumvent the limitations period established by those statutes. To the extent Edwards relies upon a list of other statutes to assert a statutory negligence claim, he has failed to set forth any allegations that plausibly establish how he was within the class of persons protected by the particular statute or how a violation of that statute proximately caused his injuries. Thus, the negligence claim was properly dismissed.

Second, the amended complaint failed to state a claim for negligent infliction of emotional distress, which requires a plaintiff to show that: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily

8

harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins*, 262 Conn. 433, 444 (2003). In addition, a plaintiff must allege that the defendant owed the plaintiff a duty to prevent the plaintiff from experiencing the alleged emotional distress. *See Perodeau v. Hartford*, 259 Conn. 729, 754 (2002). Here, the conclusory allegations in the amended complaint about McMillen threatening to exercise its foreclosure rights neither support the plausible existence of duty that would give rise to a claim for negligent infliction of emotional distress, nor do they plausibly support the other elements of such a claim. *See Twombly*, 550 U.S. at 555 (emphasizing that, in assessing plausibility under Rule 12(b)(6), we "are not bound to accept as true a legal conclusion couched as a factual allegation" (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))); *accord Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Accordingly, the district court correctly dismissed the claim for negligent infliction of emotional distress.

Finally, the amended complaint did not state a claim for breach of the implied covenant of good faith and fair dealing. This covenant aims to fulfill the reasonable expectations of the parties and ensure that "neither party [will] do anything that will injure the right of the other to receive the benefits of the agreement." *De La Concha of Hartford, Inc. v. Aetna Life Ins.*, 269 Conn. 424, 432 (2004) (internal quotation marks and citation omitted). Here, although Edwards does assert that McMillen denied him the fruits of the agreement, he fails to explain how McMillen improperly denied him the benefits of the contract he signed when the complained-of terms were clear and explicit. *See id.* at 441 (rejecting plaintiff's contention that the defendant violated the implied covenant where the defendant refused to renew the plaintiff's lease because the "defendant was not responsible either for the plaintiff's failure to pay rent or for its failure to attain [a minimum]

9

gross annual revenue" and thus, the defendant "was entitled, under the express provisions of the lease, to decline the renewal . . . for those reasons."). To hold otherwise would "achieve a result contrary to the clearly expressed terms of [the] contract." *Magnan v. Anaconda Indus., Inc.*, 193 Conn. 558, 567 (1984). In short, the district court properly dismissed the claim for the breach of the implied covenant of good faith and fair dealing.

* * *

We have considered Edwards's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10